**Danny Howard PARRISH, Appellant,**

v.

**The STATE of Texas, State.**

**No. 02–95–487–CR.**

Court of Appeals of Texas,
Fort Worth.

July 17, 1997.

Publication Ordered Aug. 8, 1997.

Mary B. Thornton, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Attorney, Betty Marshall, Charles M. Mallin, Asst. Chiefs, Appellant Section, David M. Curl, Terri Moore, Fred Rabalais, Asst. District Attorneys, Fort Worth, for State.

Before CAYCE, C.J., and DAUPHINOT and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellant Danny Howard Parrish was convicted by a jury of killing his wife of three and a half months, Vicki Reed Parrish, to collect insurance proceeds on her life. Appellant received the statutory minimum sentence of life imprisonment for the capital murder conviction. Appellant brings five points of error, claiming the following: (1) the evidence is legally insufficient to support the jury's finding that Appellant murdered for remuneration; (2) reversible error resulted from extraneous offense testimony; (3) the trial court abused its discretion by allowing the State to put on evidence of a homemade video because its probative value was substantially outweighed by the danger of unfair prejudice; and (4) reversible error occurred when the State elicited inadmissible hearsay testimony. We affirm the judgment of the trial court.

Vicki Reed Parrish met Appellant in September of 1993 and married him on April 23, 1994, seven months later. While dating, Appellant represented himself as a self-made millionaire with several successful businesses. Three days after their marriage, Appellant participated in taking out a $500,000 life insurance policy on Vicki's life. On August 4, 1994, Vicki was found dead, the

result of a lethal combination of heroin and alcohol.

In point of error one, Appellant claims the evidence is legally insufficient to prove capital murder based on remuneration but admits the evidence is sufficient to support the underlying offense of murder.[1] Therefore, we will only review the legal sufficiency of the evidence supporting the element of remuneration. In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

The standard for review is the same for direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158–62 (Tex. Crim.App.1991). Circumstantial evidence is most often used to prove the requisite mens rea, and one's actions are generally reliable circumstantial evidence of one's intent. *See Guidry v. State,* 896 S.W.2d 381, 386–87 (Tex.App.—Texarkana 1995, pet. ref'd). In the case of insurance benefits, circumstantial evidence may be sufficient to sustain a finding that the appellant intended to murder for remuneration. *See Beets v. State,* 767 S.W.2d 711, 730–34 (Tex.Crim.App.1987) (op. on reh'g.), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989).

The following evidence was presented at trial:

Appellant represented himself to others as an affluent businessman with a variety of successful business ventures. He told Vicki's friends and family that he owned a plane, a yacht, and a chalet in Canada and that he intended to purchase a twelve-room mansion with two swimming pools for Vicki. In fact, Appellant did not own the businesses he claimed, and the overwhelming majority of his income came from Vicki's savings, renting out his guest house, and collecting on homeowner's insurance claims.

A month before meeting Vicki, Appellant purchased a home in Fort Worth. Appellant made no down payment, instead he agreed to make some repairs and assured the owners that a balloon payment would be forthcoming, sometime in August or September of 1994. Appellant defaulted on his monthly payments on numerous occasions.

Appellant took out a State Farm homeowner's insurance policy on the house in September of 1993. Over the next seven months, Appellant filed three claims alleging various losses, and State Farm paid Appellant approximately $18,000 on them. Appellant then complained that the home was underinsured. However, State Farm reviewed the policy and determined that it was appropriately insured.

---

1. Section 19.03 of the Texas Penal Code provides:

(a) A person commits an offense if he commits murder as defined under Section 19.02(b)(1) and:

. . . .

(3) the person commits the murder for remuneration or the promise of remuneration. . . .

TEX. PENAL CODE ANN. § 19.03(a)(3) (Vernon 1994).

Three days after Appellant married Vicki, he contacted Jerry Bristow, a State Farm insurance agent, and inquired about a life insurance policy for his wife. Mr. Bristow recalled that Appellant played the lead role in the insurance application interview. Appellant originally requested $750,000 of coverage but, when asked for financial information necessary for such a policy, reduced the amount to $500,000. When asked why he wanted so much insurance on his wife, Appellant informed the agent that his company needed her to get this insurance on her life. Later, Appellant had that information scratched off the application.

As part of the application process, Vicki was required to submit to a medical examination. During the examination, Vicki's blood pressure and pulse were high and she appeared nervous. Mr. Bristow testified that he believed that if Vicki had been reexamined, she probably would have passed the physical. However, before this could be arranged, Appellant telephoned Mr. Bristow, irate over the delay in issuing the policy. Because Appellant appeared to be in a hurry, Mr. Bristow issued a rated policy on June 27, 1994, with Appellant as the primary beneficiary. Vicki died approximately five weeks later.

After Vicki's death, Mr. Bristow met with Appellant to obtain the mandatory information necessary for Appellant to receive the death benefits under the policy. Appellant appeared to have forgotten about the policy and seemed surprised at the large amount. Mr. Bristow thought Appellant's behavior and actions were bizarre in light of his previous interest and concern over having the policy issue for as much as possible, as quickly as possible.

After Vicki's death, Appellant called Lucinda Wagstaff, a State Farm claims representative, and expressed his concern that he was not going to get the money from the life insurance policy.

From the record before us, we find the evidence legally sufficient to support the jury's verdict that Appellant murdered Vicki Parrish for the $500,000 insurance policy on her life. Notwithstanding the circumstantial nature of the State's evidence, a rational trier of fact could have determined beyond a reasonable doubt that Appellant's intent involved murder for profit. Point of error one is overruled.

■ In points of error two and three, Appellant claims the trial court erred in overruling his motions for mistrial after inadmissible testimony was heard by the jury. Specifically, Appellant complains of a statement made by his parole officer that "Mr. Parrish was required to report to my office." Appellant also complains of testimony from one of Appellant's jail cellmates, who said, "At that time, he [appellant] told me that he was there for prescriptions." Appellant argues that these statements involved inadmissible extraneous offenses and apprised the jury of his past criminal history.

There is a presumption that an instruction to disregard inadmissible evidence may be deemed sufficient to prevent a jury from considering that evidence. *See Waldo v. State,* 746 S.W.2d 750, 754 (Tex.Crim.App. 1988); *Faulkner v. State,* 940 S.W.2d 308, 312 (Tex.App.—Fort Worth 1997, pet. filed). The presumption will stand unless the facts of the individual case show that an instruction to disregard will not serve to withdraw the impression left on the minds of the jurors. *See Waldo,* 746 S.W.2d at 754. In both instances here, the trial court promptly instructed the jury to disregard the statements, and there is nothing in the record to rebut the presumption of the efficacy of those instructions. Consequently, having given the instructions, the trial court did not abuse its discretion by denying Appellant's motions for mistrial. *See Kipp v. State,* 876 S.W.2d 330, 339 (Tex.Crim.App.1994) (standard for review of denial of motion for mistrial is abuse of discretion). Points of error two and three are overruled.

■ In point of error four, Appellant asserts that the trial court abused its discretion by allowing the State, over defense objection, to refer to the contents of a homemade videotape because its prejudicial effect substantially outweighed its probative value. The challenged testimony was that of Carol Laconey, Vicki's friend, who stated that the night before Vicki's wedding to Appellant, she

watched a videotape filmed by Appellant with Vicki playing the role of an insurance agent. Ms. Laconey described what she saw and detailed a plot involving insurance fraud to collect on a life insurance policy.

Rule 403 of the Texas Rules of Criminal Evidence provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." TEX.R.CRIM. EVID. 403. In *Taylor v. State*, 920 S.W.2d 319, 322 (Tex.Crim.App.), cert. denied, —— U.S. ——, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996), the Court of Criminal Appeals provided instruction on how a trial court should conduct a Rule 403 balancing test, setting forth the following four factors:

> (1) whether the ultimate issue was seriously contested by the opponent of the evidence;
> (2) whether the State had other convincing evidence to establish the ultimate issue to which the disputed evidence was relevant;
> (3) the compelling nature, or lack thereof, of the evidence; and
> (4) the likelihood that the evidence was of such a nature as to impair the efficacy of a limiting instruction.

*Id.* at 322.

In this case, the issue of Appellant's intent to murder Vicki to collect on her life insurance policy was hotly contested. The videotape evidence revealed that Appellant, prior to taking out the insurance policy on his wife, thought about the scenario of collecting death benefits by defrauding an insurance company. Such information was relevant to establishing Appellant's intent, preparation, and plan to commit the crime charged. It is important to note that this is not a challenge regarding the prejudicial effect of extraneous offense testimony, nor does Appellant challenge the court's ruling that the evidence was not impermissible character evidence. The testimony regarding the videotape merely portrayed a fictional scheme to defraud an insurance company. To the extent the evidence was prejudicial, such is the inherent nature of evidence used by the State to prove its case. We do not find that the trial court abused its discretion in ruling that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice. Point of error four is overruled.

 In point of error five, Appellant argues that the State committed reversible error by eliciting inadmissible, prejudicial hearsay. Appellant objected to testimony from Donna Buffington that Vicki told her she did not love Appellant. Appellant's objection was sustained and an instruction to disregard was given. Defense counsel made no request for a mistrial. As a result, Appellant received all the relief he requested. Appellant's failure to preserve an adverse ruling forfeited his right to complain about the hearsay testimony on appeal. *See Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim.App. 1993). Point of error five is overruled.

We affirm the judgment of the trial court.