NO. 12-98-00049-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


MILTON POWELL,
§
 APPEAL FROM THE 1ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SABINE COUNTY, TEXAS

 

MEMORANDUM OPINION ON REMAND


 A jury convicted Milton Powell of indecency with a child and sentenced him to fifteen years
of imprisonment. After finding the trial court committed error by admitting extraneous offense
evidence, this court reversed the conviction. Powell v. State, No. 12-98-00049-CR, 2000 Tex. App.
LEXIS 3651 (Tex. App.-Tyler, May 31, 2000), rev'd, 63 S.W.3d 435 (Tex. Crim. App. 2001). The
court of criminal appeals disagreed with this court's determination, held that the evidence was
admissible to rebut a defensive theory, and remanded the case to this court with instructions to
determine whether the evidence's probative value is substantially outweighed by the danger of unfair
prejudice. Powell, 63 S.W.3d at 440. After due consideration, we conclude that the probative value
of the evidence outweighs the danger of unfair prejudice. We also review the remainder of
Appellant's issues which concern admissibility of evidence, jury argument, and the propriety of the
State's cross-examination of defense witnesses during the punishment phase. We affirm the trial
court's judgment.


Background

 Appellant was the pastor of a church. He and his wife had four daughters, each of whom had
numerous friends who frequently spent the night at Appellant's home. When girls spent the night,
they ordinarily slept together in the living room. M.S. and her family were members of Appellant's
church. M.S. loved the Powells like a second family and, for a period of approximately three and one-half years, spent one or two nights a week at their house. M.S. testified that Appellant woke her up
in the night touching her vaginal area. Once, he tried to force his penis into her mouth. A couple of
times, he "felt around with his tongue" and "kissed" her vaginal area. She explained that, although
she was never alone with Appellant, he touched her inappropriately every time she spent the night at
his home. She also noted that she would fall asleep near her friends, but they would not be close to
her when Appellant woke her up.

 In addition to other evidence, the State presented the testimony of four witnesses who all
testified that Appellant had touched them inappropriately when they spent the night at his house with
his daughters. After the testimony of the first of these four witnesses, the trial court gave the
following limiting instruction to the jury:


 The defendant is on trial solely on the charge contained in the indictment. In reference to evidence, if
any, that the defendant has previously participated in recent transactions or acts other than but similar
to that which is charged in the indictment in this case, you are instructed that you cannot consider such
other transactions or acts, if any, for any purpose unless you find and believe beyond a reasonable doubt
that the defendant participated in such transactions or committed such acts, if any, and even then you
may only consider the same for the purpose of determining motive, opportunity, intent, plan, or the
absence of mistake or accident, if it does, and for no other purpose.


 The defense presented thirteen girls who all testified that they had spent the night at
Appellant's house and had not been touched inappropriately or seen Appellant commit any assaults.
Appellant's wife and each of their four daughters also testified on his behalf, denying that anything
inappropriate ever happened. Appellant took the stand and denied all allegations against him. The
State offered two witnesses in rebuttal who testified that Appellant had touched them inappropriately
when they were overnight guests at Appellant's house.

 In his closing argument to the jury, the prosecutor commended M.S. and the six witnesses who
testified about extraneous offenses for their courage in coming forward. He also stated that Appellant
was on trial only for crimes allegedly committed against M.S. He then explained the purposes for
which the jury could consider the evidence of crimes against other victims. He closed by asking the
jury to "keep in mind the victims of this man." The trial court included a limiting instruction in the
jury charge cautioning the jury to consider the extraneous evidence offense only for certain, specified
purposes. The charge explained that Appellant was indicted for aggravated sexual assault by causing
the penetration of the mouth of M.S. by his sexual organ and for indecency with a child by engaging
in sexual contact by touching the genitals of M.S. The jury was unable to reach a verdict on the
aggravated sexual assault charge, but found Appellant guilty of indecency with a child.


Extraneous Offenses

 In his first issue, Appellant asserts the trial court erred by allowing the State to introduce
testimony of six witnesses, all of whom described alleged assaults by Appellant. He argues that the
State offered testimony of alleged extraneous offenses merely to present Appellant as a child abuser
in general and to show that he acted in conformity with his character. He opines that this testimony
is not necessary to prove the State's case and, therefore, is not admissible. He argues that, especially
in light of the prosecutor's jury arguments, allowing six witnesses to testify that Appellant is a child
molester caused unfair prejudice.

 The State responds that the testimony of those six witnesses was properly presented to rebut
Appellant's defensive theories that 1) the complainant's story was unreasonable because she
repeatedly returned to his house, 2) the complainant was never alone with Appellant, 3) the charges
were merely a cry for attention, and 4) after her parents filed a civil suit against Appellant, the
complainant became motivated by money. The State urges that the probative value of the testimony
of these witnesses outweighed the danger of any unfair prejudice.

Applicable Law

 An accused may not be tried for some collateral crime or for being a criminal generally. 
Williams v. State, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983). Thus, once otherwise inadmissible
character evidence is shown to be relevant and admissible for permissible purposes, the court must
consider if the evidence must be excluded on grounds contemplated by Rule of Evidence 403. 
Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). Rule 403 carries the presumption that
relevant evidence will be more probative than prejudicial. Jones v. State, 944 S.W.2d 642, 652 (Tex.
Crim. App. 1996). Relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of "unfair" prejudice, that is the tendency of the evidence to suggest a
decision on an improper basis. Tex. R. Evid. 403; Montgomery v. State, 810 S.W.2d 372, 388-89
(Tex. Crim. App. 1991) (op. on reh'g). Rule 403 requires exclusion of evidence only when there
exists a clear disparity between the degree of prejudice of the offered evidence and its probative value. 
Jones, 944 S.W.2d at 652. 

 The appellate court reviews the trial court's balancing of probativeness and prejudice under
an abuse of discretion standard. Montgomery, 810 S.W.2d at 390. The trial court should consider
several factors in determining whether the prejudicial effect of evidence substantially outweighs its
probative value. These factors include: 1) how compellingly evidence of the extraneous offense
serves to make a fact of consequence more or less probable, 2) the extraneous offense's potential to
impress the jury in some irrational but indelible way, 3) the trial time that the proponent will require
to develop evidence of the extraneous conduct, and 4) the proponent's need for the extraneous
transaction evidence. Wheeler, 67 S.W.3d at 888. If review of the relevant criteria leads to the
conclusion that the danger of unfair prejudice substantially outweighs the probative value of the
proffered evidence, the trial court erred in failing to exclude it. Montgomery, 810 S.W.2d at 392.

How Compelling the Evidence Is

 Evidence that other young girls were assaulted by Appellant under the same circumstances is
highly probative, making the fact of Appellant's assault on M.S. more probable. In each instance, the
victim was sleeping in the living room of Appellant's home with Appellant and at least one other girl. 
This lends credibility to M.S.'s complaint and diminishes the viability of Appellant's argument that
he could not have assaulted M.S. because he was never alone with her. Like M.S., five of the
witnesses testified that they were awakened in the night when Appellant rubbed or touched them
inappropriately. The sixth witness testified that she woke up when she felt Appellant's head under
her blanket, near her buttocks. This, too, is probative as another example of Appellant's inappropriate
behavior. Two of the witnesses testified that Appellant had moved them during the night. This
corroborates M.S.'s testimony that she would fall asleep next to her friends but they would not be near
her when Appellant woke her up. 

 Five of these witnesses were friends with Appellant's daughters and had known Appellant for
years. These girls repeatedly returned to stay overnight at Appellant's house with their friends. Two
of these testified that they eventually began sleeping in a bedroom where Appellant would not follow. 
The sixth girl explained that she knew Appellant because he was her baseball coach. She stayed one
night with one of Appellant's daughters but never returned. Collectively, these girls reinforced M.S.'s
testimony that, although she was assaulted every time she stayed at Appellant's house, she kept
returning because she did not want to lose her friends, Appellant's daughters. The behavior of the six
witnesses is relevant to M.S.'s behavior. This testimony directly attacks Appellant's argument that
M.S.'s story was unreasonable because she repeatedly returned to his house.

Potential to Impress Jury in Irrational and Indelible Way

 Four of the witnesses described assaults essentially the same as M.S. described. Two of the
witnesses testified to more invasive sexual acts. J.G. testified that Appellant made her touch his
penis. R.N. testified that Appellant penetrated her vagina with his fingers. However, while this
testimony may have had a factual impact, in light of M.S.'s testimony that Appellant forced his penis
into her mouth and "kissed" her vaginal area, these extraneous offenses did not irrationally impress
the jury in a way that could materially impact its decision-making process. Further, any impermissible
inference of character conformity was minimized through a limiting instruction to the jury. Lane v.
State, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). The trial court gave a limiting instruction to the
jury explaining that it could not consider the extraneous offense evidence for any purpose other than
determining motive, opportunity, intent, plan, or the absence of mistake or accident. We cannot
conclude that the extraneous offense evidence was likely to create such prejudice in the minds of the
jury that it would have been unable to limit its consideration of that evidence to its proper purpose. 
See Montgomery, 810 S.W.2d at 397.

Trial Time Needed

 The record in this case is over 1600 pages long. Of that, the guilt/innocence portion is
approximately 1000 pages. The testimony of the six complained-of witnesses is contained in less than
150 of those pages. Compared to the length of the entire trial or the guilt/innocence portion, the State
spent a relatively short amount of time presenting the extraneous offense evidence. Therefore,
presentation of this evidence did not divert the jury from consideration of the indicted offense.

State's Need for the Evidence

 Other than M.S., there were no witnesses to the alleged offenses against her. The jury had to
determine whether to believe M.S. or Appellant. The testimony of six young girls describing assaults
by Appellant committed under the same circumstances goes directly to M.S.'s credibility and the
reasonableness of her story. See Wheeler, 67 S.W.3d at 888 (extraneous offense evidence describing
an offense similar to the charged event contradicted Wheeler's defensive theories). Five of those six
witnesses returned repeatedly in spite of the abuse, as did M.S. The one that did not return was not
close to any of Appellant's children. The evidence rebuts Appellant's theory that M.S.'s story was
unreasonable because she returned to his house. The extraneous offense evidence served to decrease
the likelihood that M.S. made the allegations against Appellant as a cry for attention. Further, four
of the six witnesses stated that they do not have a lawsuit pending against Appellant, thus rebutting
Appellant's claim that M.S. was motivated by the possibility of financial gain.

 Our review of the record and relevant factors under Rule 403 leads us to conclude that the
probative value of the extraneous offense evidence was not substantially outweighed by its prejudicial
impact. See id. Accordingly, we hold that the trial court did not abuse its discretion in admitting this
evidence. Accordingly, we overrule Appellant's first issue.


Hearsay

 In his second issue, Appellant asserts the trial court erred in allowing the State to present
hearsay evidence. Specifically, Appellant complains that Sheri Greer testified about statements her
daughter, J.G., made to her regarding an extraneous offense allegedly committed by Appellant. He
argues that the admission of the hearsay bolstered the State's attempted proof of the extraneous
offense and was harmful error.

 The State contends the evidence is admissible as an excited utterance. Excited utterances,
statements relating to a startling event or condition made while the declarant was under the stress of
excitement caused by the event or condition, are admissible as exceptions to the hearsay rule. Tex.
R. Evid. 803(2). This exception is founded on the belief that statements resulting from a startling
event are trustworthy because of the declarant's lack of opportunity to fabricate. Hunt v. State, 904
S.W.2d 813, 816 (Tex. App.-Fort Worth 1995, pet. ref'd). The critical factor is whether the declarant
made the statement while dominated by the emotions arising from a startling event or condition. Id. 
The trial court's decision to admit evidence will be reversed on appeal only if the court abused its
discretion. Id.

 Sheri Greer testified that she attends the church where Appellant had been pastor. Her
daughter, J.G., was friends with one of Appellant's daughters and at times spent the night at
Appellant's home. She stated that, on one Sunday, a church member stood up in church and made
some statements about the allegations of child sexual abuse against Appellant. When J.G. heard those
statements, she became visibly upset and started crying. Ms. Greer and J.G. left the church and got
in Ms. Greer's car. She tried to console her daughter and J.G. kept saying, "It's true, mama. It's
true." As they were driving away from the church, J.G. continued to be upset. Ms. Greer testified that
J.G. "said that Milton had picked her up off the couch one night in the middle of the night and she
woke up after he picked her up. And he put her in the recliner with him and he took her hand and put
it in his pants and moved it up and down." J.G. told her "it felt smooth and sticky."

 The testimony established that J.G. heard statements about the allegations against Appellant
and immediately became very emotional and upset. She remained upset and was crying as she told
her mother about what Appellant had done to her. The utterances were made before there was time
to contrive and misrepresent and they related to the startling event that had just occurred in church,
a public discussion of the child sexual abuse allegations against Appellant. See Sellers v. State, 588
S.W.2d 915, 918-19 (Tex. Crim. App. [Panel Op.] 1979); Hunt, 904 S.W.2d at 816-17. We conclude
that the complained-of testimony is admissible as an excited utterance, an exception to the hearsay
rule. Tex. R. Evid. 803(2). As the trial court did not abuse its discretion in admitting the evidence,
we overrule Appellant's second issue.


Credibility of Complainant

 In his third issue, Appellant asserts the trial court erred in allowing opinion evidence of a
counselor and a psychiatrist as to the credibility of the complainant, M.S. He complains that Reva
Batts, a licensed professional counselor, testified that M.S. was not fantasizing, had not been coached,
was not operating under duress of her parents, and was not testifying out of a motive of revenge. He
also complains that psychiatrist Dr. Edward Gripon testified that the child was not being coached, was
not fantasizing, and was not acting out of revenge. He argues that the testimony is inadmissible
bolstering.

 Ms. Batts explained that she has been trained to recognize whether a child is fantasizing, being
coached, or under duress or motivation to lie. She interviewed M.S. on two separate dates. Ms. Batts
testified that M.S. did not exhibit any characteristics of a child who was fantasizing. Further, Ms.
Batts saw no evidence that M.S. was coached, motivated by money, under duress from her parents,
or that she had any desire for revenge.

 Dr. Gripon interviewed M.S. one time. M.S. has also seen a licensed professional counselor
in Dr. Gripon's office. He explained the traits exhibited by a child who has been coached. Dr. Gripon
testified that M.S. did not strike him as a child who could be easily coached and she did not exhibit
any characteristics of a child who was being coached. He explained what to look for to determine if
a child is fantasizing. Dr. Gripon stated, "I don't think her story could be at all explained on the basis
of fantasy. So, no, I don't think that was a product of someone's fantasy life." Appellant's objection
to this response was sustained and the trial court instructed the jury to disregard that answer. The
prosecutor then asked if M.S. exhibited characteristics suggestive of a child being vengeful. Dr.
Gripon responded, "No, it did not appear to be on the basis of revenge."

Applicable Law

 We review a trial court's decision to admit evidence under an abuse of discretion standard.
Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). The threshold determination for
admitting expert testimony is whether the specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue. Tex. R. Evid. 702; Rousseau v. State, 855
S.W.2d 666, 686 (Tex. Crim. App. 1993). Expert testimony assists the trier of fact when the jury is
not qualified to the best possible degree to determine intelligently the particular issue without the help
of the testimony. Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). But, the expert
testimony must aid, not supplant, the jury's decision. Id. Expert testimony does not assist the jury
if it constitutes a direct opinion on the truthfulness of a child complainant's allegations. Yount v.
State, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993) (op. on reh'g). 

Discussion

 Ms. Batts did not express an opinion about whether M.S. was fantasizing, had been coached,
was operating under duress, or acting out of revenge. She merely stated that M.S. did not exhibit any
characteristics of a child who is fantasizing. In the same vein, Ms. Batts stated she saw no evidence
that M.S. was coached, motivated by money, under duress from her parents, or had a desire for
revenge. This is tantamount to saying she saw no characteristics normally present in a child who has
been coached, is motivated by money, under duress, or had a desire for revenge. Both sides agree that
M.S.'s credibility was at issue. We conclude that Ms. Batts testimony is admissible as rebuttal to
Appellant's attacks on M.S.'s credibility. Schutz, 957 S.W.2d at 73.

 Likewise, Dr. Gripon's testimony that M.S. did not strike him as a child easily coached and
that she did not exhibit characteristics of a child being coached does not constitute an opinion that
M.S. was not coached and those statements are admissible as rebuttal testimony. Id. Dr. Gripon's
statements that M.S.'s story could not be explained on the basis of fantasy and that he did not think
her story was a product of someone's fantasy life are inadmissible. The trial court sustained
Appellant's objection that the testimony constitutes a direct opinion on the credibility of another
witness. The trial court instructed the jury to disregard Dr. Gripon's answer. Defense counsel made
no request for a mistrial. Therefore, Appellant received all the relief he requested. His failure to
preserve an adverse ruling forfeited his right to complain on appeal. Parrish v. State, 950 S.W.2d
720, 724 (Tex. App.-Fort Worth 1997, no pet.).

 Finally, we consider Dr. Gripon's statement that it did not appear that M.S. made the
allegations of abuse on the basis of revenge. Dr. Gripon did not testify that M.S. did not exhibit
characteristics associated with revenge. He expressed an opinion on whether M.S. had in fact acted
out of revenge. This constitutes a direct comment on M.S.'s credibility and, as such, it was
inadmissible. Schutz, 957 S.W.2d at 73. The State argues that the testimony is nonetheless
admissible because Appellant "opened the door." Specifically, the State asserts that Appellant
attempted to show M.S.'s family's dislike of Appellant as a preacher and the jealousy of M.S. and her
sister toward Appellant's daughters. The State relies on testimony of Theresa Sanders, M.S.'s mother. 
However, Mrs. Sanders never said M.S. did not like Appellant. Mrs. Sanders had some negative
opinions about Appellant as a preacher. This testimony does not implicate M.S.'s credibility. Mrs.
Sanders testified about the relationship of M.S.'s sister Heather and Appellant's daughter Brandy. 
She denied any jealousy existed between them. There was no mention of jealousy on M.S.'s part. 
The State did not need to respond to Mrs. Sanders' testimony with expert testimony about the truth
of the allegations. See id. at 74. Therefore, we cannot say Appellant opened the door to Dr. Gripon's
testimony that M.S.'s allegations did not appear to be on the basis of revenge. We must, therefore,
conduct a harm analysis to determine if admission of this testimony is reversible error. See id.

 The trial court's erroneous admission of Dr. Gripon's comment on M.S.'s credibility is a non-constitutional error. See Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). Therefore, we
are to disregard the error unless it affected Appellant's substantial rights. Tex. R. App. P. 44.2(b). 
A substantial right is affected when the error had a substantial and injurious effect or influence on the
jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not overturn a
conviction for non-constitutional error if, after examining the record as a whole, we have a fair
assurance that the error did not influence the jury, or influenced the jury only slightly. Schutz, 63
S.W.3d at 444.

 Appellant's opening argument to the jury placed M.S.'s credibility at issue from the beginning
of the trial. M.S., age fourteen at the time of trial, testified in detail about her allegations that
Appellant assaulted her on a regular basis from the time she was nine or ten until she was twelve and
could not take it anymore. She described his actions, her reactions, and her failed suicide attempts. 
The jury certainly had ample opportunity to observe her and determine for itself the level of
trustworthiness her testimony warranted. Six other girls testified, describing essentially the same
allegations against Appellant. Ms. Batts' and Dr. Gripon's testimonies are consistent with M.S.'s
allegations. Brenda Garrison, the sexual assault examiner who examined M.S., found evidence,
although inconclusive, of some healed trauma consistent with digital penetration and rubbing. 

 Vivian Reeves, M.S.'s grandmother, testified that Appellant never denied the allegations and,
instead, told her he was sick, needed help, and would commit suicide if he had the courage. Theresa
Sanders testified that Appellant never denied the allegations, asked for forgiveness, and told her he
was an alcoholic and a drug addict and did not know what he was doing. Ronnie Greer, the church
organist who had been a close friend to Appellant, testified that he asked for forgiveness and did not
deny the allegations. When asked if she thought the girls were making the allegations because their
parents were dissatisfied with Appellant's preaching, Ms. Greer answered no. Neal Beall, an active
church member, testified that Appellant did not deny the allegations. 

 Kay Powell, Appellant's wife, testified that he has asked the Sanderses to forgive him for what
they thought he had done. She also stated that he did deny the allegations. Appellant's four daughters
testified that none of the girls who stayed overnight ever gave any indication that anything was amiss. 
They explained that no one was moved during the night and there was enough light in the living room
to see. Appellant took the stand and denied any inappropriate touching. He stated that M.S. is lying
about the allegations and he is the truth teller. He further stated that M.S. believes in the world of the
make believe. The defense presented thirteen girls who testified that they had been guests in
Appellant's home under the same circumstances as M.S. and had never been assaulted. Thus, the jury
had before it each side's fully developed version of the events. 

 If the jury believed the State's witnesses, particularly M.S., then Dr. Gripon's improper
statement would likely have a minimal effect on the jury. The jury was presented with ample
evidence, apart from Dr. Gripon's improper statement, to support a conclusion that the allegations
against Appellant were true.

 Our search of the record revealed no evidence of revenge on the part of M.S. Appellant
attempted to paint a picture of M.S.'s parents, Theresa and Frank Sanders, as spiteful people who
manipulated their daughters, using them to destroy Appellant. However, there was no evidence that
M.S. was motivated by her parents' desire for revenge, if in fact that was the case. 

 Further, although it unanimously found Appellant guilty of indecency with a child, the jury
was deadlocked on the question of guilt or innocence as to the charge of aggravated sexual assault. 
Therefore, the trial court declared a mistrial on that charge. This indicates the jury did not allow Dr.
Gripon's opinion to supplant their own, or they would have convicted him of aggravated sexual
assault as well. See Schutz, 63 S.W.3d at 445. Considering the record as a whole, Dr. Gripon's
improper testimony that M.S.'s allegations did not appear to be on the basis of revenge had no effect
on Appellant's substantial rights and was harmless. We overrule Appellant's third issue.


Rule 404(b) Notice

 In his fourth issue, Appellant contends the trial court erred in allowing the State to present
testimony of A.B. He complains that the State did not notify him of its intention to present evidence
of an alleged extraneous offense through this witness as required by Texas Rule of Evidence 404(b). 
He further argues that, since the defendant's case never mentioned this witness, her testimony was not
true rebuttal evidence.

 A.B. was originally asked to testify for the defense. Although she was scheduled to do so, at
the last minute, she decided against testifying for Appellant. After the defense rested, the State called
her to testify as a rebuttal witness. The court of criminal appeals determined that her testimony was
properly admitted as rebuttal of a defensive theory. Powell, 63 S.W.3d at 439. Rule 404(b) notice
is only required when the evidence is introduced in the State's case-in-chief. Tex. R. Evid. 404(b);
Jaubert v. State, 74 S.W.3d 1, 3 (Tex. Crim. App.), cert. denied, 537 U.S. 1005, 123 S. Ct. 495, 154
L. Ed. 2d 403 (2002). As this evidence was not introduced in the State's case-in-chief, no notice was
necessary. We overrule Appellant's fourth issue.


Jury Argument

 In his fifth issue, Appellant asserts the trial court erred in allowing the prosecutor to state his
negative opinion of Appellant in closing argument to the jury. Specifically, he complains of the
prosecutor's statement that Appellant was the "most arrogant defendant that has ever sat in that stand
and testified."

 In closing argument to the jury, the prosecutor reviewed the evidence. He reminded the jury
that church leaders declined to remove Appellant from his position as pastor because he had not been
proven guilty in a court of law. During the same time period, Appellant was assuring local law
enforcement that the situation was being handled within the church. He then made the complained-of
statement. Appellant's objection was overruled and his motion for a mistrial was denied. The
prosecutor continued: "Why was he so arrogant? Because he managed to fool the leadership of the
New Hope Baptist Church, and now he wants to fool you folks."

 The general areas of proper jury argument are summation of the evidence, reasonable
deduction from the evidence, answer to the argument of opposing counsel, and plea for law
enforcement. Walker v. State, 664 S.W.2d 338, 340 (Tex. Crim. App. 1984). If the argument exceeds
permissible bounds, no reversible error occurs unless the argument affects the accused's substantial
rights. Tex. R. Evid. 404(b); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on
reh'g). To determine if the State's improper argument affected Appellant's substantial rights, we look
to three factors: (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and
(3) the certainty of conviction absent the misconduct. Id.

 We shall assume without deciding that the prosecutor's remark that Appellant is "the most
arrogant defendant that has ever sat in that stand and testified" was improper. We proceed directly
to a harm analysis. The prosecutor explained his comment to the jury, based on facts in evidence. 
He made his point and moved on to other matters. By labeling Appellant "arrogant," the prosecutor
did not tell the jury he believed Appellant is guilty. Calling Appellant "arrogant" pales in comparison
to other improper argument that has been held to be harmless. See Burns v. State, 556 S.W.2d 270,
285 (Tex. Crim. App. [Panel Op.] 1977) (Where prosecutor referred to defendant as "animal,"
evidence justified the reference.); Hernandez v. State, 791 S.W.2d 301, 307 (Tex. App.-Corpus
Christi 1990, pet. ref'd.) (Prosecutor's reference to defendant as "scum and goat" not proper, but not
reversible error.); Norwood v. State, 737 S.W.2d 71, 74 (Tex. App.-Houston [14th Dist.] 1987, pet.
ref'd) (Prosecutor's reference to defendant as "animal" was error, but not reversible.).

 The jury had heard from church members describing how they had loved Appellant and did
not want to believe the allegations as well as the complainant and six other girls describing offenses
committed by Appellant. It also heard defense testimony from Appellant, his family, and thirteen girls
who testified that Appellant had not assaulted them. The jury was able to judge Appellant's demeanor
for itself. The complainant's testimony alone was enough to convict Appellant. See Lozano v. State,
958 S.W.2d 925, 928-29 (Tex. App. - El Paso 1997, no pet.). We conclude that the State's comment
did not affect Appellant's substantial rights. See Mosley, 983 S.W.2d at 259. We overrule
Appellant's fifth issue.


Cross-Examination of Character Witnesses

 In his sixth issue, Appellant contends the trial court erred, at the punishment phase, in allowing
the prosecutor to ask his character witnesses questions concerning issues other than character. 
Appellant explains that, over objection, the prosecutor asked whether or not the witnesses agreed with
the jury's verdict and what type of punishment the witnesses would want if their children were
molested. Appellant asserts the questioning had nothing to do with testing the opinion of the
witnesses concerning the defendant's character. He referenced "typical direct and cross-examination,"
citing the testimony of his first punishment phase witness in its entirety.

 Appellant presented eight witnesses at the punishment phase. Their testimony covers almost
one hundred pages in the record. Appellant has not identified the specific questions of which he
complains or made specific arguments concerning each question. Nor has he noted their location in
the record. This court is not required to search the record for what we must presume to be the
question Appellant is complaining about. Appellate review extends only to complaints made in
accordance with our published rules of appellate procedure which require an appellant to specify the
pages in the record where the alleged error can be found. Tex. R. App. P. 38.1(h); Narvaiz v. State,
840 S.W.2d 415, 429 (Tex. Crim. App. 1992). Further, although based on the same theory of
recovery, the absence of separate references to the record for each contention under this issue results
in a forbidden multifarious issue. See Armstrong v. State, 845 S.W.2d 909, 910 (Tex. Crim. App.
1993) (per curiam). Appellant has presented nothing for review. We overrule Appellant's sixth issue.


Conclusion

 The probative value of the extraneous offense evidence presented by the six witnesses who
described assaults by Appellant outweighs the danger of any unfair prejudice created by the evidence. 
The trial court did not abuse its discretion in admitting evidence of an excited utterance or the expert
testimony by the counselor. It erred in admitting only one of the psychiatrist's statements. However,
that error did not affect Appellant's substantial rights and was harmless. Appellant received the Rule
404(b) notice that he was entitled to receive. The State's closing argument to the jury did not
constitute harmful error. Finally, Appellant waived any error concerning the State's cross-examination of witnesses at the punishment phase.

 We affirm the trial court's judgment.


 DIANE DEVASTO 

 Justice


Opinion delivered December 31, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(DO NOT PUBLISH)