ACCEPTED
12-14-00160-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/20/2015 11:51:53 PM
CATHY LUSK
CLERK

Cause No. 12-14-00160-CR

In the Court of Appeals for the
Twelfth Judicial District at Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/20/2015 11:51:53 PM
CATHY S. LUSK
Clerk

Joshe Leesheen Johnson,
Appellant

v.

State of Texas,
Appellee

On Appeal from Cause No. 2013-0719 in the 159th
Judicial District Court of Angelina County, Texas

**State's Brief**

April Ayers-Perez
Assistant District Attorney
Angelina County D.A.'s Office
P.O. Box 908
Lufkin, Texas 75902
(936) 632-5090 phone
(936) 637-2818 fax
State Bar No. 24090975
aperez@angelinacounty.net

**Oral Argument Not Requested**

## Identity of Parties and Counsel

Joshe Leesheen Johnson, Appellant
405 Marion Street
Lufkin, Texas 75901

John D. Reeves
Attorney for Appellant (trial and appeal)
1007 Grant Ave.
Lufkin, Texas 75901
SBN: 16723000

Art Bauereiss
District Attorney
Attorney for the State (trial)
Angelina County District Attorney's Office
P.O. Box 908
Lufkin, Texas 75902
SBN: 01921800

April Ayers-Perez
Assistant District Attorney
Attorney for the State (appeal)
Angelina County District Attorney's Office
P.O. Box 908
Lufkin, Texas 75902
SBN: 24090975

## Table of Contents

Identity of Parties and Counsel ............................................................................. ii

Table of Contents ................................................................................................. iii

Index of Authorities .............................................................................................iv

Statement Regarding Oral Argument ....................................................................vi

Issue Presented .....................................................................................................vi

Statement of Facts .................................................................................................1

Summary of the Argument.....................................................................................3

Argument...............................................................................................................3

    **Reply Issue #1:** The evidence is legally sufficient to sustain the trial court's finding of guilt of the offense Criminal Mischief >=$1500 <$20,000. ........................................................................................................3

        Applicable law..................................................................................4

        Standard of review...........................................................................4

        Elements of Criminal Mischief >=$1,500 <$20,000 have been met .................................................................................................6

        The Amount of Damages is Equal to or Greater than $1,500.............10

Prayer ..................................................................................................................11

Certificate of Compliance ...................................................................................12

Certificate of Service .......................................................................................12

# Index of Authorities

**Cases**                                                                                                           Page

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2012) ........................................5

*Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2004) ...........................................4

*Fitts v. State*, 982 S.W.2d 175 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) ...................................................................................................................6

*Guidry v. State*, 896 S.W.2d 381 (Tex. App.—Texarkana 1995, pet. ref'd).............6

*Jackson v. Virginia*, 443 U.S. 307 (1979)..................................................................5

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) .........................................4

*Parrish v.* State, 950 S.W.2d 720 (Tex. App.—Fort Worth 1997, no pet.)...............6

*Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013)........................................5

**Rules**

Tex. R. App. P. 9.4(i)(1) .............................................................................................12

Tex. R. App. P. 39.1......................................................................................................vii

**Statutes**

Tex. Pen. Code Ann. § 28.03 (West 2011) ...................................................................4

## Statement Regarding Oral Argument

Pursuant to Tex. R. App. P. 39.1, the State feels oral argument is unnecessary, as the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

## Issue Presented

**Reply Issue #1:** The evidence is legally sufficient to sustain the trial court's finding of guilt of the offense Criminal Mischief >=$1500 <$20,000.

## Statement of Facts

On September 3, 2012 the appellant, Joshe Johnson, is accused of vandalizing her apartment as she was moving out after being evicted.[1] Terry Allen, the owner of the apartment that the appellant was renting, testified that the appellant lived at the apartment in question starting in March 2012 until she moved out on September 3, 2012.[2] Despite signing a lease, the appellant breached her lease by not paying her rent.[3] It was at this point that Ms. Allen started the eviction process.[4] Ms. Allen was awarded a writ of possession as a result of the eviction process against the appellant on August 30,2012.[5] The following weekend was a holiday (Labor Day) so the maintenance man was not able to go through the apartment until September 4, 2012.[6] While going through the apartment on September 4, 2012, the maintenance man, Tracy Goodart, discovered that the apartment had been vandalized.[7] The damage to the apartment noted by Ms. Allen was,

> "…and the apartment was just totally trashed. The ceiling fan in the living room looked like somebody had took a bat or something and went through and busted all the glass, all the bulbs, all the fixtures out. They did it in the dining room, the hallway. They busted the – the light fixtures out of

---

[1] V R.R. at 5-7.
[2] *Id.* at 11.
[3] *Id.* at 12.
[4] *Id.* at 15.
[5] *Id.*at 17-18 *See* State's Exhibit 9 (Writ of Possession).
[6] *Id.* at 19-20.
[7] *Id.*at 21.

1

it.  On the wall to the right where the thermostat is, it was completely busted off the wall.  I look over to the left in the kitchen, the dishwasher was completely, completely tore out and bent over, tilted over onto the floor and opened.  The sink, and the washing machine had trash, McDonald's stuff, had all kinds of trash stuffed into the washer machine… into the bathroom, the vanity area where you have your medicine cabinet deal.  It was completely busted.  Glass was on the floor, glass was in the tub.  The back – one of the back bedrooms, another glass was completely removed out of it and laying on the floor.  And it was all busted up, the window.  I don't recall the sliding glass door to be broke, but all of the fixtures and the ceiling, everywhere was completely busted."[8]

Ms. Allen noted that the appellant was the only person with a key to the apartment and nobody else had any sort of dispute at that time with Ms. Allen or her company.[9]  Annette Caldwell, the appellant's upstairs neighbor, then testified about the fact that the appellant sent her a text message on September 2, 2012 asking if her stuff was outside her apartment.[10]  Ms. Caldwell assured her it was not, and Ms. Caldwell informed the court that there was no damage to the apartment at that point.[11]  The juvenile witness, who will be referred to as John Doe for privacy purposes, testified that the appellant drove him to the apartment on September 3, 2012 to help move her stuff out.[12]  The appellant had already made at least one trip to the apartment before John Doe went.[13]  John Doe witnessed the

---

[8] *Id.* at 21-22.
[9] *Id.* at 29.
[10] *Id.* at 91.
[11] *Id.*
[12] *Id.* at 106.
[13] *Id.* at 111.

appellant breaking numerous items within the apartment and vandalizing it.[14] John Doe was able to point to all the pictures taken of the vandalized apartment and point out that either the appellant damaged it in front of him or it was damaged prior to him arriving.[15] Lastly, Officer Petty took the stand and testified that the appellant was no cooperative with the investigation.[16]

## Summary of the Argument

The appellant vandalized an apartment that she was renting from Terry Allen after being evicted on September 3, 2012. The appellant called her neighbor, Annette Caldwell, to make sure her belongings were still in her apartment. The next day the appellant went to the apartment and, after moving her belongings out with the help of Tiffany Booth, the appellant damaged the apartment causing almost $4,000 worth of repairs. A juvenile witness, John Doe, witnessed the appellant damaging the apartment.

## Argument

**Reply Issue #1:** The evidence is sufficient to sustain the trial court's finding of guilt in the charged offense of criminal mischief, >=$1,500 <$20,000.

---

[14] *Id.* at 110-13.
[15] *Id.* at 111-14.
[16] *Id.*at 159.

3

*Applicable law*

A person commits the offense of Criminal Mischief if, without the effective consent of the owner, he intentionally or knowingly damages or destroys the tangible property of the owner.[17] A criminal mischief charge is a state jail felony if the amount of pecuniary loss is $1,500 or more but less than $20,000.[18]

*Standard of review*

Sufficiency of the evidence in a bench trial is measured by a standard analogous to the "hypothetically correct jury charge" standard, which includes the statutory elements of the offense as modified by the charging instrument.[19] Such a charge would be one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[20]

In this case, the charging instrument (indictment) alleged:

Defendant, on or about the 6th day of September, 2012 A.D. ... did then and there intentionally or knowingly damage or destroy tangible property, to-wit: an apartment unit located in the city of Lufkin, Texas, by pulling a dishwasher away from under a counter, pulling a faucet from a sink, breaking light bulbs, ceiling fans and fixtures with the defendant's hand or by striking the light bulbs, ceiling fans, and

---

[17]    Tex. Pen. Code Ann. § 28.03 (West 2011).
[18]    Tex. Pen. Code Ann. § 28.03 (West 2011).
[19]    *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2004).
[20]    *Malik,* 953 S.W.2d at 240.

fixtures with a faucet fixture, by placing items in a clothes washer, by breaking windows with the defendant's foot, by creating a hole in a wall of the apartment unit by punching the wall with the defendant's hand or kicking the wall with her foot, by removing cabinet doors and drawers with the defendant's hand or hands, by pulling a thermostat fixture with the defendant's hands or by striking the thermostat fixture with a faucet fixture, by breaking a mirror with the defendant's hand or foot or with a faucet fixture, by damaging the threshold of the apartment unit by manner and means unknown to the grand jury, without the effective consent of Terri Allen, the owner of said property, and did thereby cause pecuniary loss of $1,500 or more but less than $20,000 to the said owner.[21]

The State must prove every element of the crime charged beyond a reasonable doubt.[22] In reviewing the legal sufficiency of the evidence to support a conviction, the court considers the evidence in the light most favorable to the verdict to determine whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt.[23] When evaluating the sufficiency of the evidence, the court must presume the trier of fact resolved any conflicts in the evidence in favor of the verdict and defer to that resolution.[24]

A criminal conviction may be based upon circumstantial evidence and circumstantial evidence alone can be sufficient to establish guilt.[25] In circumstantial evidence cases, not every fact and circumstance needs to point

---

[21]  C.R. at 11.
[22]  *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979).
[23]  *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).
[24]  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2012).
[25]  *Temple*, 390 S.W.3d at 359.

"directly and independently to the defendant's guilt."[26] If the conclusion is supported by the "combined and cumulative force" of all the incriminating circumstances, the evidence is sufficient to establish guilt.[27] Circumstantial evidence is often used to prove the requisite *mens rea*, and one's actions are generally reliable circumstantial evidence of one's intent.[28]

*Elements of Criminal Mischief >=$1,500 <$20,000 have been met*

In order to find a defendant has committed the offense of criminal mischief >=$1,500 <$20,000 the state must prove, beyond a reasonable doubt, that:

a. A person commits an offense if, without the effective consent of the owner:
   (1) He intentionally or knowingly damages or destroys the tangible property of the owner
   (2) He intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person; or
   (3) He intentionally or knowingly makes markings, including inscriptions, slogans, drawings, or paintings, on the tangible property of the owner
   (4) A state jail felony if the amount of pecuniary loss is (A) $1,500 or more but less than $20,000.

---

[26]   *Id.*
[27]   *Id.*
[28]   *Fitts v. State*, 982 S.W.2d 175, 188 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd); *Parrish v.* State, 950 S.W.2d 720, 722 (Tex. App.—Fort Worth 1997, no pet.); *Guidry v. State*, 896 S.W.2d 381, 386-87 (Tex. App.—Texarkana 1995, pet. ref'd);

6

In the present case, the appellant lived at an apartment complex that was owned by Terry Allen.[29] Shortly after moving in to the apartment the appellant was behind on her rent payments, and Ms. Allen sent her late notices.[30] After the appellant vacated the apartment Ms. Allen saw the damage left in the appellant's wake,

> "…and the apartment was just totally trashed. The ceiling fan in the living room looked like somebody had took a bat or something and went through and busted all the glass, all the bulbs, all the fixtures out. They did it in the dining room, the hallway. They busted the – the light fixtures out of it. On the wall to the right where the thermostat is, it was completely busted off the wall. I look over to the left in the kitchen, the dishwasher was completely, completely tore out and bent over, tilted over onto the floor and opened. The sink, and the washing machine had trash, McDonald's stuff, had all kinds of trash stuffed into the washer machine… into the bathroom, the vanity area where you have your medicine cabinet deal. It was completely busted. Glass was on the floor, glass was in the tub. The back – one of the back bedrooms, another glass was completely removed out of it and laying on the floor. And it was all busted up, the window. I don't recall the sliding glass door to be broke, but all of the fixtures and the ceiling, everywhere was completely busted."[31]

The appellant also had the only key to the apartment, failed to ever return that key, and her neighbors saw her home in the days leading up to the discovery of the vandalism of the apartment.[32] The maintenance man at the apartments, Tracy Goodart, had checked the apartment prior to the appellant moving in 2012 and

---

[29] V R.R. at 8.
[30] *Id.* at 14. *See* State's Exhibit 2 (late notice) and State's Exhibit 3 (late notice).
[31] *Id.* at 21-22.
[32] *Id.* at 32.

there was no major damage to the apartment.[33] In the four months that the appellant lived there, more specifically on September 3, 2012, the apartment was damaged.[34] As soon as Ms. Allen and Mr. Goodart noticed the damage they took pictures of the damage to the apartment.[35] The appellant's neighbor, Annette Caldwell, also testified that the appellant called her the day before the vandalism of the apartment occurred to tell her that she would be going over to her apartment the next day.[36] At the time Ms. Caldwell noted that the appellant's apartment had no evidence of damage and the door was closed.[37] Ms. Caldwell also witnessed the damage left by the appellant, "I saw the window was tow all out, the door was left open, there was the debris all in the living room. And then all the light fixtures in there was tow all up."[38] The juvenile witness, John Doe, also spoke to the damage caused by the appellant to her apartment.[39] On September 3, 2012 the defendant drove John Doe over to the apartment to help her move her belongings out.[40] The appellant made one trip to the apartment prior to picking up John Doe and having him go with her to the apartment.[41] When John Doe arrived at the apartment with

---

[33] *Id.* at 56.
[34] *Id.*
[35] *Id.* at 60. *See* State's Exhibits 4-23.
[36] *Id.* at 91.
[37] *Id.* at 99.
[38] *Id.* at 96.
[39] *Id.* at 104.
[40] *Id.* at 108.
[41] *Id.* at 111.

8

the appellant damage had already been done to the apartment, and the appellant and a friend continued to do more damage to the apartment.[42] John Doe stated, "she [appellant] broke the sink handle in the kitchen. She broke the bathroom mirror. She broke the windows out, and then Tiffany had broke the lights off the fan."[43] The appellant even asked John Doe to help her vandalize the apartments, which he refused to do.[44] John Doe stated that he recognized the State's pictures of damage to have been done by the appellantor have already been done prior to John Doe arriving at the apartment.[45]

It is up to the finder of fact to determine the credibility and weight to give each witness. In the case at hand the finder of fact, the trial court, chose to believe that the totality of the circumstances dictated that the appellant committed the offense of criminal mischief for the damages done, not just in front of John Doe, but prior to John Doe's arrival. It is not just John Doe who provides testimony toward the appellant's guilt, but Annette Caldwell saw the apartment was not damaged prior to the appellant moving out, and Tracy Goodart testified that the apartment was not damaged prior to the appellant moving in.

---

[42] *Id.*at 109.
[43] *Id.* at 110.
[44] *Id.* at 109.
[45] *Id*. at 112-13. *See* State's Exhibit 18 (John Doe stated defendant caused this damage in front of him), State's Exhibit 17 (John Doe stated this damage was already there), State's Exhibit 16 (John Doe stated defendant caused this damage in front of him), State's Exhibit 13 (John Doe stated this damage was already there), State's Exhibit 12 (John Doe stated defendant caused this damage in front of him), and State's Exhibit 10 (John Doe stated this damage was already there).

*The Amount of Damages is Equal to or Greater than $1,500*

During the non-jury trial of the defendant the maintenance man for the apartments, Tracy Goodart, stated that the damage was estimated around $4,400.[46] This estimate was based on bids that Mr. Goodart received in order to perform the repairs to the apartment that was vandalized by the defendant.[47] At the end of the non-jury trial the court expressed some doubts as to State's Exhibit 24, which listed the amount of damages.[48] As such, the state revised the figure to comply with the courts findings and the new amount of restitution, which the defendant was ordered to pay by the trial court, was $3,892.[49] Appellant is joint and severally liable for all the damage caused by both the defendant and any damage caused by her friend, Tiffany. It is not just the damage witnessed by John Doe that the defendant is responsible for, but all the damage caused by the defendant in the court of vandalizing the apartment owned by Terry Allen that the defendant is liable for. The total amount of that is $3,892 as recognized and ordered by the trial court.

Given the totality of the circumstances, in a light most favorable to the trial court's verdict, the defendant was properly convicted of criminal mischief >=$1,500 <$20,000.

---

[46] *Id.* at 27.
[47] *Id. See* State's Exhibit 24 (cost of damage done to the apartment).
[48] II R.R. at 88-90.
[49] III R.R. at 9.

10

## Prayer

The State of Texas prays that this Court of Appeals affirm the judgment of the trial court.

Respectfully Submitted,

/s/ April Ayers-Perez

Assistant District Attorney
Angelina County D.A.'s Office
P.O. Box 908
Lufkin, Texas 75902
(936) 632-5090 phone
(936) 637-2818 fax
State Bar No. 24090975
ATTORNEY FOR THE
STATE OF TEXAS

**Certificate of Compliance**

I certify that this document contains 2,629 words, counting all parts of the document except those excluded by Tex. R. App. P. 9.4(i)(1). The body text is in 14 point font, and the footnote text is in 12 point font.

/s/ April Ayers-Perez

**Certificate of Service**

I certify that on January 20, 2015, a true and correct copy of the above document has been forwarded to John Reeves, 1007 Grant Street, Lufkin, TX 75901, by electronic service through efile.txcourts.gov.

/s/ April Ayers-Perez

12