**Obiozor Louis OBIGBO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–97–01083–CR.**

Court of Appeals of Texas, Dallas.

Aug. 26, 1999.

William T. Hughey, Dallas, for Appellant.

Lorraine A. Raggio, Asst. Dist. Atty., Dallas, for State.

Before Justices OVARD, JAMES, and BRIDGES.

## OPINION

Opinion By Justice JAMES.

Obiozor Louis Obigbo appeals his conviction for insurance fraud. Following a jury trial, appellant was found guilty and sentenced to confinement for two years in a state jail facility, probated for five years. In three points of error, appellant contends the evidence is legally insufficient to support the verdict, the evidence is factually insufficient to show appellant knowingly and intentionally committed an offense, and the trial court committed charge error by failing to define the word "material." Because we conclude the evidence is legal-ly and factually sufficient to support appellant's conviction and the trial court did not err in omitting a definition of "material" in the charge, we affirm.

Appellant submitted an insurance claim to Alamo Rent A Car alleging that nearly $11,000 worth of clothing was stolen from a Chevrolet Corsica appellant rented from Alamo. In a personal effects loss report appellant submitted to Alamo, appellant described the incident as follows:

> My wife and I returned from a trip to Durant, Oklahoma around 12:00 midnight, parked the rental car in the parking lot (across the street from my residence), left our bags in the car. In the morning, I came out to pick up our bags before going to a business, I noticed the window to the left rear door was broken and our two bags stolen. Then I called the Carrollton Police.

The loss report listed the following items as stolen:

| -Owner | Item | Value | Date of Purchase | Where Purchased |
|---|---|---|---|---|
| LOUIS O. OBIGBO | 2 SUITS - 3 PIECE BY GIVENCHY | $2,200.00 | JAN.18,1995 | LAGOS |
| LOUIS O. OBIGBO | 2 PAIRS -MAURI EXOTIC SHOES | $2,000.00 | " " " | " |
| LOUIS O. OBIGBO | 3 SUSPENDER BELTS | $ 150.00 | " " " | " |
| LOUIS O. OBIGBO | 4 DRESS SHIRTS | $ 400.00 | " " " | " |
| LOUIS O. OBIGBO | 3 PAIRS OF TROUSER | $ 570.00 | " " " | " |
| ANNE OBIGBO | 4 PAIRS OF LADY'S SHOES | $1,000.00 | " " " | " |
| ANNE OBIGBO | 2 CORD-CAPION MATERAIAL GALA DESIGNER | $2,600.00 | " " " | " |
| ANNE OBIGBO | 2 BUBA DRESSES | $ 900.00 | " " " | " |
| ANNE OBIGBO | 2 SKIRT SUITS | $1,100.00 | " " " | " |
| LOUIS O. OBIGBO | 2 BLACK BAGS | $ 250.00 | MARCH, 1993 | DALLAS |

(Spelling as in original).

Appellant also produced two receipts in support of his claim. The first is dated January 18, 1995 and purports to reflect a cash sale from "Ubabro Mkt. Consultancy" of "Balogun Lagos" to appellant of the "U.S.A." in the total amount of $5320. Each of the first five categories of items listed on the loss report, together with their value, is reflected on the receipt. No items other than those, however, are listed on the receipt. At the top of the receipt, printed below the name of the company, is the following information:

Dealers in all types of Cosmetics and Various Beauty Materials, Wholesales & Retails

### BE PROUD OF YOUR BEAUTY

The second receipt is dated November 11, 1994 and purports to reflect a cash sale from "Ets Oscar & Partners (Nig.), Brain Investments (W.A.) Ltd." to "Mrs. Anne Obigbo" of Onitsha in the total amount of $5600.00. This receipt shows company offices in Onitsha, Nigeria and Balogun, Lagos, but it does not reflect where the sale

purportedly took place. Similar to the first receipt, this receipt lists each of the categories of items listed on the loss report for Anne Obigbo, together with their values, and no other items are listed.

Appellant also reported the theft to the police. The police report lists three items of damaged or lost property. It states that a door window was damaged and two items were stolen, a "black bag" valued at $100 and a "black tote bag" valued at $60. The police report places the total value of the loss at $310, including $150 for the damaged window. Following the listing of these three items, there are twelve lines left blank. There is no mention of the contents, if any, of the two bags or of the items of clothing appellant reported stolen to Alamo. Below the twelve blank lines is a section for additional comments. It states: "NARRATIVE USED FOR ADDITIONAL PROPERTY YES ___ NO ___." The "no" block is marked.

Appellant's claim was forwarded to Susan Pitts, a claims representative for Alamo's insurer. Pitts testified she received an anonymous phone call alerting her that a "ring of Nigerians" was planning to submit a number of false theft claims to Alamo and that one had already been submitted.[1] According to the caller, Alamo was targeted because it maintains higher policy limits than most other rental car companies.[2] The caller mentioned the names of several people who allegedly were involved, including appellant. Pitts confirmed that Alamo had in fact received claims which met the profile mentioned by the caller, including appellant's. According to Pitts, the receipts appellant provided in support of his claim were questionable because they were handwritten, from a foreign country, and for a high dollar amount.

Pitts forwarded appellant's claim to Dave McCreary, an auditor with Ameri-

can International Group (AIG), Alamo's insurer, to conduct an investigation. After McCreary finished his investigation, Pitts wrote appellant a letter stating his claim was denied because the receipts appellant provided did not correspond with the records from the stores where the merchandise allegedly was purchased. In response, Pitts received a letter from appellant's attorney enclosing two affidavits purporting to verify appellant's purchase of the merchandise. Pitts forwarded the affidavits to McCreary.

Pitts further testified the claim was submitted under a property and casualty insurance policy, the documents submitted for the claim would affect any right to payment and the amount paid, she had reason to believe the claim was false, and the false information affected the insured.

McCreary testified he received appellant's claim from Pitts and conducted an investigation. McCreary explained that the accuracy of the claim documents affects the amount of payment to which a claimant would be entitled and anything false in the documents would affect the amount of any payment. McCreary testified he doubted the authenticity of appellant's claim, and he forwarded the claim and supporting documentation to Ben Phillips, an investigator for AIG in Dallas, for further investigation. McCreary also hired an insurance investigator in Nigeria, Ayo Oshodi, to investigate appellant's claim.

Phillips testified he interviewed appellant and recorded the conversations with appellant's consent. The transcripts and recordings of two conversations were introduced into evidence. In his discussions with Phillips, appellant repeated the version of events stated in his loss report. Although the receipt for the women's clothing reflects Anne Obigbo purchased

---

1. The trial court admitted the testimony about the anonymous caller for the limited purpose of "show[ing] why she acted in a certain way if she did."

2. The Alamo claim form states that the insurance coverage provided is $5000 per person and $10,000 per vehicle, with a $50 deductible for each claim.

those items in November 1994, appellant claimed to have personally purchased all the items listed on the loss report while he was in Lagos, Nigeria the previous January. Appellant also agreed to furnish his passport to Phillips. According to Phillips, the passport indicated appellant arrived in Nigeria on January 14, 1995 and departed January 21, 1995. Otherwise, the passport had not been used for the five years prior to January 1995. There was no indication appellant was in Nigeria in November 1994 when the loss report shows the women's items were purchased.

Appellant also told Phillips that he worked out of his apartment and operated a business named Vndiz Enterprise, which bought electronics and other merchandise overseas for sale in Nigeria. Phillips testified he could find no corporate listing for Vndiz Enterprise or otherwise determine whether appellant worked.

Ayo Oshodi also testified. He stated he is an insurance investigator in Nigeria and has worked in the insurance industry for twenty-six years. He has investigated fraudulent claims since 1972. Oshodi investigated appellant's claim by visiting the addresses of the companies printed on the receipts to determine if the shops existed and whether the items listed on the receipts were sold there. Oshodi testified that the items appellant claimed to have lost were not available in Nigeria, and, even if they could be found there, they would not have been sold at the locations he visited. He stated the locations listed on the receipts consisted of small, local shops in crowded areas, "where you don't expect anything of great importance being sold except petty trading."

At the address purporting to house "Ubabro Mkt. Consultancy," Oshodi found only a small room at the back of an old building. There was no sign board outside. The room contained a chair, desk, and bench. At the desk was a man who identified himself as C.C. Ubanwa, chief marketing consultant. Oshodi determined that the types of items appellant claimed

he purchased there were not available. The only item for sale in the room was a poster hanging on the wall. Outside the building was a display of hair care products.

Oshodi also investigated the other receipt. At neither of the two addresses listed on the receipt was there any business operating by the name of "Ets Oscar & Partners" or "Brain Investments." Oshodi concluded the goods listed on the receipt were not sold at those locations.

Oshodi testified he could not confirm the existence of any of the companies printed on the receipts. He attempted to call the telephone numbers listed on the receipts, but generally there was no answer or a recording stating that service was not available. On one occasion Oshodi did get through to someone but was informed the individual he asked for was not there. He also attempted to verify the existence of the companies with the Corporate Affairs Commission in Nigeria but was unable to do so. Oshodi further attempted to locate the two individuals who purported to sign the affidavits for appellant stating he had purchased the goods listed on the receipts, but Oshodi was unable to locate either individual. Oshodi did locate the notary who allegedly notarized the affidavits. After discussing the matter with the notary, Oshodi concluded the affidavits were false. Based on his investigation, Oshodi determined the companies named in the receipts do not exist and the locations for the companies listed in the receipts were not in areas where items of the sort appellant claimed were stolen could be purchased.

On cross-examination, Oshodi conceded the items listed in the receipts could be sold in certain boutique shops in Lagos, Nigeria. He was unable to find any shops which had these items, however, and he did not know of any store where they could be found. Oshodi acknowledged it was possible for a merchant who did not carry a type of merchandise to acquire the merchandise from another vendor, mark it

up, and sell it to a customer. He further stated it is possible for merchants to refer to themselves as "general importers" but not have merchandise on hand at their place of business. Oshodi also acknowledged he originally obtained "some numbers" which indicated the companies shown on the receipts were registered but later determined they "were the wrong numbers." Oshodi further stated he did not know if anyone at the locations he visited sold appellant the merchandise appellant claims was stolen, but Oshodi was unable to confirm that anyone did so. He also conceded he did not travel to Abouja, Nigeria and personally visit the Nigerian corporate affairs office.

Appellant called Latif Adeniji to testify. Adeniji testified he formerly practiced law in Lagos, Nigeria, and had been licensed to practice law in the United States for a year and one-half. He testified that the Balogun section of Lagos, where Ubabro Mkt. Consultancy allegedly was located, is a busy commercial area where one could purchase most anything. He stated it was not unusual for multiple traders to share the same location and display no sign boards. Further, Adeniji claimed it is not conclusive an item is not available simply because it is not displayed in a store because goods may be stored hundreds of miles away. He also testified it is common for commercial transactions to be conducted in United States currency. Additionally, he stated it was necessary to physically go to the Nigerian corporate affairs registry in Abouja to determine if a business entity exists which is not listed in the corporate register; correspondence with the corporate affairs registry was rarely effective.

On cross-examination, Adeniji testified the affidavits allegedly verifying appellant's purchases were not in proper form because they lacked a seal. On further examination, he stated it was possible the seal simply could not be seen on the photocopies he examined. Appellant's counsel subsequently tendered for examination what he represented to be the originals of the affidavits. The "originals," however, differed from the copies previously submitted into evidence.

Appellant called no other witnesses.

## LEGAL AND FACTUAL SUFFICIENCY

### 1. Standard of Review

■■■ In his first and third points of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. When we review a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Green v. State,* 893 S.W.2d 536, 538 (Tex.Crim.App.1995). We determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). We consider all of the evidence presented, whether properly or improperly admitted. *Miles v. State,* 918 S.W.2d 511, 512 (Tex.Crim.App.1996). This standard leaves to the fact finder the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *See Dumas v. State,* 812 S.W.2d 611, 615 (Tex.App.-Dallas 1991, pet. ref'd). The fact finder is the sole judge of the credibility of the witnesses and the weight given their testimony. *Id.* Thus, the fact finder is free to accept or reject any or all of a witness's testimony. *Id.; see also Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991).

■■■ When we review challenges to the factual sufficiency of the evidence, we view all of the evidence without the prism of "in the light most favorable to the prosecution." *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In conducting this review, we must be appropriately deferential to the fact finder's determination. *Id.* We may not "find" facts or substitute our

judgment for that of the fact finder. *Id.* at 135. We review the fact finder's weighing of the evidence and are authorized to disagree with the fact finder's determination. *Id.* However, it is not enough that we believe a different result is more reasonable. *Id.* We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Id.* at 129. Matters of credibility and conflicts in the evidence fall within the exclusive purview of the fact finder. *See Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997). We defer to the fact finder's resolution of those conflicts. *See id.* at 409.

### 2. Applicable Law

Appellant was charged with violating section 35.02(a) of the Texas Penal Code, which provides:

> A person commits an offense if, with intent to defraud or deceive an insurer, the person causes to be prepared or presents to an insurer in support of a claim for payment under a health or property and casualty insurance policy a statement that the person knows contains false or misleading information concerning a matter that is material to the claim, and the matter affects a person's right to a payment or the amount of payment to which a person is entitled.

TEX. PEN.CODE ANN. § 35.02(a) (Vernon Supp.1999).

The predecessor to section 35.02,[3] former section 32.55, became effective September 1, 1993. *See* Act of May 21, 1993, 73rd Leg., R.S., ch. 904, 1993 Tex. Gen. Laws 3779, 3780. The goal of the legislation "was to counter the growing number and magnitude of accident insurance fraud rings." HOUSE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. H.B. 1487, 74th Leg., R.S. (1995). The legislation was intended to target "knowing participation of filing a false claim for insurance proceeds." *Id.* The Legislature deemed the legislation a more efficacious means of attacking such activity than requiring prosecutors to continue to rely on statutes covering theft and fraud generally. *Id.* Section 32.55, however, was limited to fraudulent healthcare claims and was omitted from the revised penal code in 1994. Current section 35.02 replaced the prior statute and was expanded to include insurance fraud concerning property and casualty insurance. *Id.*

■ Although there are no reported cases interpreting either section 35.02 or its predecessor, section 32.55, it is clear the elements of the offense, including intent to defraud and deceive, may be proved by circumstantial evidence. *Bryant v. State,* 982 · S.W.2d 46, 49 (Tex.App.Houston [1st Dist.] 1998, pet. ref'd) (citing *Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Crim.App.1991)); *see also Beets v. State,* 767 S.W.2d 711, 734–39 (Tex.Crim.App.1987) (op. on reh'g) (holding circumstantial evidence was sufficient to sustain conviction for murder for remuneration where defendant allegedly committed murder to obtain insurance proceeds), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989).[4] A culpable mental state is nearly always proven by circumstantial evidence. *See Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App.

---

**3.** Unless otherwise noted, all statutory references are to the Texas Penal Code.

**4.** Courts in other jurisdictions with similar criminal statutes concerning insurance fraud have upheld convictions and inferred fraudulent intent based largely upon circumstantial evidence. *See, e.g., People v. Singh,* 37 Cal. App.4th 1343, 44 Cal.Rptr.2d 644, 662 (1995) (applying former section 556(a)(4) of California Insurance Code);*People v. Aksoy,* 84 N.Y.2d 912, 620 N.Y.S.2d 806, 644 N.E.2d 1362, 1363 (1994) (applying New York Penal Law § 176.05); *State v. Nickles,* 728 P.2d 123, 127–28 (Utah 1986) (applying Utah Criminal Code § 76-6–521); *see also United States v. Marrero,* 904 F.2d 251, 256–57 (5th Cir.1990) (applying 18 U.S.C. § 287 (presenting false insurance claims to an agency of the United States) and 18 U.S.C. § 641 (theft of government property having a value in excess of $100)).

1978); *Parrish v. State*, 950 S.W.2d 720, 722 (Tex.App.-Fort Worth 1997, no pet.); *Gardner v. State*, 736 S.W.2d 179, 182 (Tex.App.-Dallas 1987), *aff'd*, 780 S.W.2d 259 (Tex.Crim.App.1989). The jury may infer criminal intent from all the circumstances. *See Dillon*, 574 S.W.2d at 94. Once the jury has drawn that inference, "it is not for this Court to overturn such an inference, drawn on the whole of the circumstances, because one witness testified to the possibility that the inference could be false even though soundly supported by the circumstances." *See id.* at 95. Actions are generally reliable circumstantial evidence of one's intent. *Parrish*, 950 S.W.2d at 722; *Guidry v. State*, 896 S.W.2d 381, 387 (Tex.App.-Texarkana 1995, pet. ref'd). Our standard for review is the same for direct and circumstantial evidence cases. *Geesa*, 820 S.W.2d at 158–59; *Lowery v. State*, 974 S.W.2d 936, 937 (Tex.App.-Dallas 1998, no pet.).

In his first point of error, appellant challenges the legal sufficiency of the evidence to support his conviction. Specifically, appellant contends there is no evidence to show appellant's property was not damaged or lost in the manner and circumstances described in the loss report. Appellant further argues the testimony of the State's witnesses is "mixed" as to whether the businesses named in the receipts existed and contends the State's evidence is insufficient in light of the testimony of appellant's witness.

■■ In a legal sufficiency review, we must ignore the evidence favorable to appellant and view only the evidence favorable to the State to determine if the evidence supports appellant's conviction. *Green*, 893 S.W.2d at 538. Therefore, it is irrelevant if the testimony of the State's

witnesses was "mixed" or whether appellant's witness was persuasive. We determine only whether the evidence when viewed through the prism of the light most favorable to the prosecution, as was the jury's prerogative, will support appellant's conviction. *Cf. Clewis*, 922 S.W.2d at 134. Having reviewed the record under the appropriate legal standard, we conclude the evidence of appellant's guilt is legally sufficient.

■ While there is little direct evidence of appellant's guilt, the circumstantial evidence is compelling. In reaching its verdict, the jurors were free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *See Jones v. State*, 900 S.W.2d 392, 399 (Tex.App.-San Antonio 1995, pet. ref'd); *Wawrykow v. State*, 866 S.W.2d 87, 88–89 (Tex.App.-Beaumont 1993, pet. ref'd); *see also United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir.1992), *cert. denied*, 507 U.S. 1004, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993). Appellant's insurance claim defies common sense and ordinary life experience. Initially, appellant's story that he packed a large and expensive wardrobe for such a short trip is suspicious.[5] Additionally, the likelihood is remote that a person would happen to pack, for one short trip, an extensive wardrobe of clothing which was all purchased at the same time from a single store, and neatly contained on one receipt. The likelihood two people would do so, appellant and his wife,[6] simply boggles the mind. Further, in his conversation with investigator Phillips, appellant was unable to identify any other items which allegedly were stolen with the bags,

**5.** The rental receipt shows appellant picked up the car at 2:00 p.m. on Saturday, September 2, 1995, and planned to return the car by 4:00 p.m. the following Monday. Therefore, it appears appellant could have planned for no more than a two-night trip. According to his statement to Phillips, appellant was out of town for only two nights. Yet, appellant

claims he and his wife packed enough clothing for several days.

**6.** It was never established whether appellant was in fact married. During closing argument, the State argued that this portion of appellant's story was fabricated as well.

except "maybe toothbrushes." For appellant (and his wife) to have packed all, and only, the items which appear on the two receipts simply stretches credulity to the breaking point. To further the string of unlikely coincidence, the value of the items allegedly stolen happens to minimally exceed the $5000 per claim limits of the insurance policy in effect. The jury could properly infer these circumstances are more indicative of appellant's intent to defraud rather than a product of unfortunate coincidence.

Additional circumstances also exist from which the jury could have inferred appellant intended to file a fraudulent insurance claim. Appellant provided a weak explanation for renting the car in the first place, claiming he had no reliable transportation for the short trip from Carrollton to Durant, Oklahoma. This was a particularly curious explanation because appellant claimed to have friends who deal in automobiles and also claimed to sometimes ship automobiles from Europe to Nigeria as part of his business. Appellant also appeared to lack the means to purchase the items he claims to have owned. Appellant was not employed. He claimed to operate a company out of his apartment through which he purchased electronics and other items from Europe and Korea for shipment to Nigeria, but Phillips testified he could find no record of any such company.

There also was evidence appellant could not have acquired the items he reported stolen in the manner he claimed. Ayo Oshodi, the Nigerian investigator hired by Alamo's insurer, testified the clothing allegedly stolen could not be purchased at the locations or from the businesses shown on the receipts appellant submitted to support his claim. The jury was entitled to believe Oshodi's testimony and conclude the receipts were fabricated as part of

appellant's scheme to file a fraudulent insurance claim. Further, Oshodi testified the two affidavits appellant submitted to authenticate the receipts were themselves fabricated. Appellant himself provided additional evidence to support Oshodi's conclusion by, first, introducing into evidence what purported to be copies of the affidavits, and, later, purporting to produce the originals for examination, when in fact the "copies" differed from the "originals."

Furthermore, the loss report appellant submitted to Alamo's insurer differed materially from other documentation relevant to the claim. In the loss report, appellant claims all the items he reported stolen were purchased on January 18, 1995. The receipt for the women's items, however, is dated November 11, 1994. Although appellant's passport shows that he was in Nigeria on January 18, 1995, he was not on November 11, 1994.

The loss report is also inconsistent with the police report. There is no mention in the police report that appellant complained any clothing was stolen. The only items listed as stolen in the police report are two black bags. The jury could have concluded that had appellant actually suffered a theft of over $10,000 in clothing, there would have been some mention of it in the police report. Yet, this alleged theft is first mentioned in appellant's insurance claim. From its omission in the police report, the jury could have concluded the loss was fabricated for the purpose of submitting a fraudulent insurance claim.[7]

After viewing the evidence in the light most favorable to the prosecution, we conclude any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We overrule appellant's first point of error.

■ Appellant's factual sufficiency point simply incorporates his legal sufficiency argument and, based on the testimony of

---

**7.** We also note the value stated for the two black bags listed in the police report is considerably less than the value listed in the insurance claim ($160 versus $250). The fact

the value of the bags was inflated over the value in the police report is further evidence appellant intended to submit a fraudulent insurance claim.

his expert, Latif Adeniji, argues Oshodi's investigation did not sufficiently take into account certain peculiarities of Nigerian commerce.[8] Appellant argues that in Nigeria it is possible to obtain goods from a merchant who does not stock the items at his place of business and usually trades in different types of merchandise than the goods purchased. Appellant contends, therefore, that Oshodi's failure to find, at the locations he visited, merchandise which was similar to the items listed on appellant's receipts is not inconsistent with appellant's version of events. We note, however, Adeniji only testified as to a possible explanation for the variance between Oshodi's findings and the receipts; he did not testify that the clothing appellant claims he purchased could be or was obtained from the merchants named in the receipts. We may not overturn the jury's conclusion based on one witness who testified to the possibility that the inference the jury could draw may be incorrect. *See Dillon,* 574 S.W.2d at 95.

At any rate, appellant's position essentially boils down to an argument that Adeniji's testimony was more credible than Oshodi's. In reviewing a factual sufficiency point, we must defer to the jury's resolution of credibility issues. *See Cain,* 958 S.W.2d at 408–09. The jury is the sole judge of the credibility of the witnesses and is free to reject testimony of the witnesses in whole or in part. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Karnes v. State,* 873 S.W.2d 92, 95 (Tex.App.-Dallas 1994, no pet.). The jury, therefore, was free to reject Adeniji's testimony in its entirety and, based on all the evidence, conclude appellant fabricated the insurance claim.

Moreover, appellant's narrow focus on a single aspect of the trial testimony is insufficient to establish the verdict is factually insufficient. When reviewing a case for factual sufficiency, we must review all the evidence. *Clewis,* 922 S.W.2d at 129. We may not reverse a decision for factual insufficiency without detailing the evidence relevant to the issue in consideration, clearly stating why the jury's finding is factually insufficient, and setting forth in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *See Cain,* 958 S.W.2d at 407. Appellant's brief fails to review all the evidence and does not clearly demonstrate how evidence contrary to the verdict clearly outweighs *all* the evidence favorable to the verdict. Based on our review of all the evidence, we cannot conclude the verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Clewis,* 922 S.W.2d at 129. We overrule appellant's third point of error.

### CHARGE ERROR

In his second point of error, appellant contends the trial court erred in failing to define the word "material" in the court's charge. Appellant concedes he did not object at trial to the omission of the definition and the standard set forth in *Almanza* therefore applies. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1984) (op. on reh'g). Consequently, to obtain a reversal, appellant must show egregious harm. *See id.* To show egregious harm, appellant must show he was denied a fair and impartial trial. *Id.* "Egregious harm consists of errors affecting the very basis of the case, or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive." *Hall v. State,* 937 S.W.2d 580, 583 (Tex. App.-Texarkana 1996, pet. ref'd). In determining whether egregious harm oc-

---

**8.** Although appellant phrases the point to state that the evidence is insufficient to show appellant "knowing and intentionally" committed the offense, nowhere in his factual sufficiency argument does appellant focus on this element of the offense. Therefore, we view his point of error as a general attack on the factual sufficiency of the evidence to support appellant's conviction.

curred, this Court must review the error "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. It is appellant's burden to persuade this Court that he suffered egregious harm as a result of the charge error. *See Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994).

Appellant contends because the penal code provides several examples of what may constitute material information for purposes of insurance fraud, the trial court should have defined the word "material" in the charge by including a relevant example from the statute. Appellant further contends he was harmed because had the charge included a definition of "material" derived from the statute, there is no evidence from which the jury could have concluded appellant's conduct was material.[9] We disagree.

 First, we conclude the trial court did not err in failing to define the word "material." Section 35.02(c) lists nine examples of material information for the purpose of establishing the offense of insurance fraud. Appellant contends the trial court should have included the eighth example in the charge as the definition of "material." Section 35.02(c)(8) provides:

> For purposes of Subsection (a), information concerning a matter that is material to a claim for payment under an insurance policy includes information concerning:
>
> \* \* \*
>
> (8) whether property was damaged or lost in the manner and under the cir-

cumstances described in a statement related to a claim for insurance payment.

Tex. Pen.Code Ann. § 35.02(c)(8) (Vernon Supp.1999).[10]

 We agree with the State that the list of examples in subsection (c) is nonexclusive. The word "includes" is a term of enlargement and not of limitation. *See* Tex. Gov't Code Ann. § 311.005 (Vernon 1998). Therefore, the legislature did not limit the definition of material information for an offense related to property and casualty insurance to the matter described in subsection (c)(8). When a term is not specifically defined by the legislature, jurors are free to read statutory language to have any meaning which is acceptable in common parlance. *Denton v. State*, 911 S.W.2d 388, 390 (Tex.Crim.App.1995). Words in a statute should be open to the broadest possible understanding the context permits. *Bingham v. State*, 915 S.W.2d 9, 10 (Tex.Crim.App.1994). Therefore, we conclude the trial court did not err in omitting a definition of "material" which limited material information to the example set forth in section 35.02(c)(8).

 Even if the trial court did err, however, appellant has not shown he suffered egregious harm from the omission. The State provided ample evidence from which the jury could have concluded appellant submitted false, material information to an insurer which would fall within the example of section 35.02(c)(8). From the evidence presented, the jury could have concluded appellant's property was not "damaged or lost in the manner and under the circumstances described in" the loss report and supporting documentation appellant submitted. Accordingly, we overrule appellant's second point of error.

---

9. The State contends appellant's no evidence discussion in this point of error is a multifarious argument which waives the point. We interpret the discussion as appellant's attempt to demonstrate harm, and, in the interest of justice, we will address the point.

10. The first seven items in this subsection relate only to insurance fraud claims concerning health care and are therefore irrelevant here. The ninth and final item concerns multiple claims relating to the same property and is also irrelevant.

We affirm the judgment of the trial court.