

NUMBER 13-12-00040-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CRAIG JOSEPH PITRE A/K/A
KEVIN JAMES PITRE,                                                   Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

**On appeal from the Criminal District Court
of Jefferson County, Texas.**

# MEMORANDUM OPINION[1]

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Craig Joseph Pitre a/k/a Kevin James Pitre challenges his conviction for

unauthorized use of a vehicle, a state-jail felony.  *See* TEX. PENAL CODE ANN. § 31.07(a)

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

(West 2011). A jury found Pitre guilty and sentenced him to two years in the state jail. By four issues, which we have reorganized and renumbered, Pitre complains that the evidence is insufficient to support his conviction and that the trial court erred when it instructed the jury on the law of parties. We affirm.

## I. BACKGROUND[2]

It is undisputed that on October 18 and 19, 2010, Pitre worked as a vacuum truck driver for contractor Streamline Production at the Sunoco Logistics plant. It is also undisputed that each worker at Sunoco Logistics, including Pitre, carried a personally coded badge to access and exit the plant. In addition, trial testimony revealed the following: (1) on October 18, 2010 at 22:43 hours, Pitre's card was scanned at the same time a vehicle identified as Pitre's small silver car entered the Sunoco Logistics plant; (2) at 23:48 hours, Pitre's card was scanned when a 2001 white Chevrolet Silverado truck left the plant; (3) on October 19, shortly after midnight, a person, identified by his face, features, clothing, and movements as Pitre, walked into the plant; (4) at 00:17 hours, Pitre's card was scanned at the plant's entry gate; (5) at 00:18 hours, a small silver car left the plant using Pitre's card to exit; (6) Pitre went to work at 07:00 hours when he "badged" himself into the plant; (7) later that morning, Karen Sue Moore, an administrative secretary for HMT, another contractor at Sunoco Logistics, was unable to locate her white Chevrolet Silverado work truck[3]; (8) Pitre's card was disabled about 6:00 p.m.; (9) at 8:16

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[3] Moore testified, on cross-examination, that within a week, the truck was located across the street from Sunoco Logistics, behind a Valero gas station and near an apartment complex.

p.m. a truck drove up to the front gate, and its occupant scanned Pitre's badge to gain entry into the plant; (10) the gate would not open, and the truck left the parking lot; (11) shortly thereafter, Daniel Brown, Pitre's supervisor, called Pitre's cell phone; and (12) Pitre told Brown that he was asleep at home and had left his badge in his car.

## II. SUFFICIENCY OF THE EVIDENCE

By his first three issues, Pitre challenges the sufficiency of the evidence to support his conviction. He asserts that the evidence is insufficient to prove that he was the driver of the white 2001 Silverado truck or that the truck was owned by Moore, as alleged in the indictment. *See* TEX. PENAL CODE ANN. § 31.07(a). Pitre further contends that, if he was the driver of the truck, the evidence is insufficient to establish that he knew he did not have consent to operate the vehicle. *See id.*

### A. The Law

In a legal sufficiency review, we consider the entire trial record, viewing the evidence in the light most favorable to the verdict, to determine whether a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact to, among other things, draw reasonable inferences from basic facts to ultimate facts." *Padilla v.* State, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (quoting *Jackson*, 443 U.S. at 319).

The trier of fact then is the sole judge of the facts, the credibility of the witnesses,

3

and the weight given to testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Williams*, 235 S.W.3d at 750. Instead, an appellate court, faced with a record of historical facts that supports conflicting inferences, must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla*, 326 S.W.3d at 200.

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits the offense of unauthorized use of a vehicle if: (1) he intentionally or knowingly operates; (2) another's motor-propelled vehicle, a truck in this case; and (3) he did so without the effective consent of the owner. *See* TEX. PENAL CODE ANN. § 31.07(a); *McQueen v. State*, 781 S.W.2d 600, 602 (Tex. Crim. App. 1989) (en banc).

The instant conviction rests upon direct and circumstantial evidence. The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9,13 (Tex. Crim. App. 2007); *see Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) (explaining that the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt). With circumstantial evidence, as long as

4

"the verdict is supported by a reasonable inference, it is within the province of the fact[]finder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 323. In addition, as with any question of circumstantial evidence and inference, "the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.); *see Saenz v. State*, 976 S.W.2d 314, 322 (Tex. App.—Corpus Christi 1998, no pet.) ("Jurors are expected to draw upon their own experiences and common knowledge and apply them to the facts at hand."); *Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd). "'[T]he standard of review on appeal is the same for both direct and circumstantial evidence cases.'" *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

## B. Sufficiency of the Evidence to Establish that Pitre was the Driver of the Vehicle

In his first issue, Pitre contends that the evidence is insufficient to establish that he was the driver of the truck.[4] Pitre asserts that no witness could identify him as the driver of the truck because no one was there when any events allegedly occurred, except Sergeant Jeffrey Beam, one of Sunoco Logistics' security officers. Rather, Pitre asserts that the witnesses could only have inferred a connection "because someone . . . used

---

[4] Pitre also argues that the evidence is insufficient to establish that he *operated* the vehicle and cites authority discussing the "operation" element of the offense. *See* TEX. PENAL CODE ANN. § 31.07 (West 2011); *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App.1995) (holding that the plain meaning of the word "operate" as used in section 31.07 means that "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use"). Because it is undisputed that someone enabled the white Silverado truck's use when it was driven out of the plant, we are not persuaded by this argument. Rather, we will address the first issue only to the extent Pitre challenges the sufficiency of the evidence to establish his identity as the person who operated the vehicle. *See* TEX. PENAL CODE ANN. § 31.07; TEX. R. APP. P. 47.4.

[his] identification badge to check out and attempt to check in at the security gate while driving what appeared to be (on video) the pickup, but . . . Brown . . . called [Pitre] on his cell phone just after the truck left the gate, [and Pitre told him that he] was 'at home in bed'" and had left his badge in his car. Pitre argues that anyone who may have borrowed Pitre's car would have had access to his security badge and that any number of people could have taken the truck because, in accordance with Sunoco Logistics' rules, keys were left in the unlocked trucks.

This identification issue rests on circumstantial evidence; it is not necessary that the State bring evidence that someone saw Pitre drive the truck. *See Powell*, 194 S.W.3d at 507. And, while no one identified Pitre as the driver of the truck, testimony outlining the chronology of events establishes that Pitre's badge was scanned during the following relevant times: (1) October 18, 2010, when a small car matching the description of Pitre's car entered the plant at 22:43; (2) when a truck left the plant at 23:48; (3) October 19, 2010, when a person was dropped off and walked into the plant at 00:17; (4) when a small car matching the description of Pitre's car exited the plant at 00:18; (5) when Pitre came to work at 07:00 hours; and (6) when, later that evening after Pitre's card had been disabled, the occupant of a truck unsuccessfully attempted to gain entry into the plant. The evidence also establishes that the small car referenced above was Pitre's vehicle, the truck was HMT's missing truck, and the person walking into the plant was Pitre. From these facts, the jury could have reasonably inferred that Pitre, himself, used his card to enter and exit the plant, not only when he walked in but also when he drove into and out of the plant in his vehicle and when he drove out of the plant and attempted to

6

drive into the plant in the truck. In addition, access records revealed that Pitre scanned his card upon arrival at work the morning after the truck was driven from the plant, a fact from which the jury could have reasonably inferred that Pitre was also in possession of his card the night before when it was scanned at the plant. It is also undisputed that Pitre communicated on his cell phone with his supervisor the evening the truck was denied admittance to the plant. The jury could have drawn a reasonable inference that Pitre was away from his home, rather than asleep in bed, when he talked with Brown.

In this case, the cumulative effect of all the circumstantial, incriminating facts is sufficient to establish that Pitre was the driver of the vehicle. *See Hooper*, 214 S.W.3d at 13. The verdict is supported by reasonable inferences, all of which are within the province of the jurors, using their common knowledge, observation, and experience gained in the ordinary affairs of life, to choose. *See Laster*, 275 S.W.3d at 323; *Obigbo*, 6 S.W.3d at 306; *Saenz*, 976 S.W.2d at 322; *Jones*, 900 S.W.2d at 399. Considering the entire trial record, viewing the evidence in the light most favorable to the verdict, and deferring to the trier of fact, we conclude that a rational jury could have found beyond a reasonable doubt that Pitre was the driver of HMT's truck. *See Jackson*, 443 U.S. at 319; *Padilla*, 326 S.W.3d at 200; *Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Beckham*, 29 S.W.3d at 15. We overrule Pitre's first issue.

C. **Sufficiency of the Evidence to Establish That Karen Moore Was the Owner of the Truck, as Alleged in the Indictment**

Pitre acknowledges that HMT owned a white Chevy pick-up with Oklahoma plates located on the back of the truck but not on the front and does not, on appeal, claim that

7

Moore was not properly testifying as the truck's "owner" under Texas law.  *See* Tex. Penal Code Ann. § 1.07(a)(35)(A) (West 2011) (defining "owner" as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor").  Rather, by his second issue, Pitre claims that "[w]hen Ms. Moore backed off of her identification of the vehicle on the security video as being the HMT vehicle she often drove, necessary proof of the . . . 'ownership' of the vehicle . . . evaporated."

Three witnesses—Brown, Sergeant Beam, and Moore—testified regarding the identity, or ownership, of the vehicle.  Brown identified the vehicle on the surveillance video—State's Exhibit 8—as the HMT vehicle and explained that he was familiar with that vehicle because it was parked behind his yard and he saw it all the time.  Sergeant Beam testified that he had observed this vehicle leave the plant after access was denied and that he "was able to see that [the truck] had an Oklahoma license plate on the tail."  Sergeant Beam believed the white Chevy Silverado truck belonged to HMT because "[i]t matched the description that [he] received earlier from when they reported it missing"—"[a] white Chevy extended cab, Oklahoma license plate."  Moore agreed that the video showed her vehicle, the truck she drove to work, leaving the plant without any one's permission.  Moore stated that she had "driven the truck for five years" and "just could identify it."

Brown, Sergeant Beam, and Moore also testified that the stolen truck's distinctive features included no front license plate and Oklahoma tags on the back of the truck.  Moore also observed that the truck had a front bumper.  According to Moore, the only

8

other white Chevy Oklahoma truck inside the plant did not have a front bumper on it, and it was driven by another person who took it home every night. Sergeant Beam observed that the Oklahoma plate located on the back of the truck is a distinguishing feature because only one other contractor company may have them—most trucks in the plant had Texas plates.

On cross-examination, Moore acknowledged that other companies at the plant owned white Chevy trucks and that although she could see that the license plate was an Oklahoma plate, she could not "visually identify" it.[5] Moore emphasized that she had "said it had . . . no Texas tag on the front . . . which made me believe, yes, that it is my truck . . . 'cause Texas does require to have one on the front." Sergeant Beam agreed that he could not read the numbers on the plate, but explained that "[t]here's [sic] a couple [trucks with Oklahoma license plates in the plant], not many." Moore also thought that HMT was the only company that had a 2001 truck, "but couldn't say definitely."

Considering the entire trial record and viewing the evidence in the light most favorable to the verdict, we do not agree with Pitre that "Moore backed off her identification of the vehicle on the security video" or that "necessary proof of the . . . 'ownership' of the vehicle . . . evaporated." Instead, we conclude the jury reached a rational decision when it determined the identity of the truck and that the truck at issue was owned by Moore, as alleged in the indictment. *See Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750. Even were we faced with a record that supports conflicting inferences, we would presume that the jury resolved any

---

[5] Pitre provides no authority, and we find none, for the proposition that a witness must know the license plate number of a vehicle in order to identify it.

such conflicts in favor of the prosecution, as we must, and we would defer to the jury's resolution of ownership. *See Jackson*, 443 U.S. at 326; *Padilla*, 326 S.W.3d at 200. Pitre's second issue is overruled.

**D.  Sufficiency of the Evidence to Establish Pitre Knew That He Did Not Have Consent to Operate the Vehicle**

In the alternative, Pitre appears to claim, by his third issue, that if he were the driver of the vehicle, the State failed to prove that he knew he did not have consent to operate the truck because (1) Moore testified that she was uncertain as to whether the truck on the video was her truck and (2) Pitre did not know of the HMT policies limiting who could drive the vehicle within the plant. *See* TEX. PENAL CODE ANN. § 31.07(a). We are not persuaded by either argument.

First, as set out above, the evidence sufficiently established that the truck identified on the surveillance video was owned by HMT or Moore, through her possession. *See* TEX. PENAL CODE ANN. § 1.07(a)(35)(A). In addition, testimony that a car owner did not give consent to operate her vehicle can be sufficient to support a finding that a defendant knew he did not have consent to operate the vehicle. *Battise v. State*, 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). In this case, Moore testified that Pitre did not have permission or consent at any time to operate the vehicle. *See id.* Because Moore's testimony alone is sufficient to support a lack of consent finding, this contention also fails. We overrule this third issue.

### III.  LAW-OF-PARTIES INSTRUCTION

In his fourth issue, Pitre argues that a law-of-parties instruction was improper because the evidence was insufficient to support this instruction. "In general, an

instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999) (citing *McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim. App. 1974)); *see* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). However, even were we to agree that the evidence adduced at trial did not support this instruction, as Pitre asserts, and would not support a jury verdict under the law of parties, "'where [as in the instant case] the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Ladd*, 3 S.W.3d at 564-65 (quoting *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986) (en banc)). In other words, because the evidence did not tend to show Pitre's guilt as a party, the jury almost certainly did not rely upon the parties instruction in arriving at its verdict. Rather, the jury based the verdict on the evidence, outlined earlier, that tended to show Pitre's guilt as a principal actor. Thus, we conclude error, if any, was harmless. *See id.* We overrule the fourth issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 2nd
day of August, 2012.