# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00286-CR

**Ruben Arispe, Jr. Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 8 OF TRAVIS COUNTY
### NO. C-1-CR-08-501704
### THE HONORABLE CARLOS HUMBERTO BARRERA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Ruben Arispe, Jr. of the offense of theft of $500 or more, but less than $1,500. *See* Tex. Penal Code § 31.03(a)*.* The trial court assessed his punishment at confinement for 180 days in the Travis County Jail. On appeal, Arispe argues that the evidence against him is insufficient to support his conviction. We affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that in June of 2008, Ruben Arispe, Jr. owner of Elite Custom Builders, entered into a contract with Scott Solomon, a retired police officer, to renovate the kitchen in Solomon's rental property. Arispe had previously completed renovation projects for Solomon, who was satisfied with Arispe's work. Arispe had twice previously been convicted of theft. However, Solomon testified that he was not aware of Arispe's criminal history. The State

entered a copy of the contract between Solomon and Arispe into evidence. This copy of the contract came from Arispe's posession. It contained both Solomon and Arispe's signatures and a projected finish date of October 27, 2008. However, Solomon testified that *his* copy of the contract did not have any projected finish date on it. Solomon believed that Arispe must have added the finish date to the contract after it was signed because he never would have agreed to a finish date in October.

On June 20, 2008, Solomon gave Arispe a check for $900.00 to purchase the materials needed to complete the project. During previous projects, Solomon had also given Arispe money for the purchase of materials. Arispe cashed the check the same day he received it and placed the funds in his business account. However, Arispe did not purchase any materials for the project. Arispe testified that some of the funds might have been used for his own personal expenses. Furthermore, after the contract was signed on June 20, 2008, Arispe did not begin the work in the rental property. Nor did he respond to Solomon's attempts at communications until June 30, 2008. During those ten days, Solomon claimed no one associated with Arispe worked at or went to the rental property.

On June 30, 2008, Arispe told Solomon that he would begin work on the project the following Monday. Solomon testified that on that Monday neither Arispe nor any of his associates showed up or performed any work at the project site. In his testimony, Arispe presented several reasons for the delay in starting the project. During June, Arispe had moved to New Braunfels with his wife, a fact which Solomon was aware of according to Arispe. Additionally, Arispe stated he had some contact with Solomon after his move and understood that he was to begin work on the project

after certain items had been removed from the house. The items remaining in the home included items of furniture and life-size latex figurines.

Arispe testified that he was unable to begin working at Solomon's rental property because of the items left in the house. He explained that during a previous project, he had damaged one of Solomon's figurines. Therefore, he did not want to begin the kitchen project until the figurines had been removed from the house. Even though the figurines were not in the kitchen, Arispe was concerned that they would be damaged while moving supplies into the house. Additionally, Arispe testified that while he did not purchase materials for the project, he did go to the property and take measurements. He also stated he sent subcontractors to the rental property to help Solomon move the items so work could begin. However, Solomon testified that no one associated with Arispe ever helped him remove items from the rental property.

Between July 1, 2008 and July 30, 2008, Solomon stated he sent Arispe approximately 15 text messages, 15 voice mail messages, and emails. Arispe claimed not to have received any of these emails or messages from Solomon during this time because his email account was stopped. Arispe began to take on other projects and did not contact Solomon about completing work on the rental property.

On July 30, 2008, Solomon met with an Austin Police Department detective to press charges against Arispe. While on his way to press charges, Solomon left Arispe a final message asking Arispe to contact him to resolve the matter before police involvement became necessary. Arispe did not respond to the message. Several months later Solomon received an email from Arispe asking him to sign a document that stated that this dispute was a misunderstanding and Arispe would

3

pay Solomon back when he received his tax refund. Solomon refused to sign the document but offered to drop the charges if Arispe returned the $900.00. Due to his incarceration on an unrelated offense and financial troubles, Arispe was unable to repay any of the $900.00.

The jury found Arispe guilty of theft of $500 or more but less than $1,500. The judge assessed Arispe's punishment at confinement for 180 days in jail. This appeal followed.

## DISCUSSION

### *Sufficiency of the Evidence*

Arispe complains that the evidence is insufficient to support his conviction for theft. He argues that the evidence fails to show he *intended* to deprive Solomon of his property without his consent because there is no evidence to show he did not intend to perform on the contract at the time he entered into it.

### *Standard of Review*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

4

In determining the sufficiency of the evidence, we must consider all the evidence in the record that the jury was permitted to consider, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 722, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved all conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A sufficiency review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. The jury, as exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04. Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). We consider only whether the jury reached a rational decision. *See Cherry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Every fact does not need

5

to point directly and independently to the guilt of the appellant, as long as the cumulative force of the incriminating circumstances is sufficient to support the conviction. *Id.* So long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 523. As with any question of circumstantial evidence and inference, "'the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence.'" *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012, pet. granted) (quoting *Obija v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.)).

*Theft in a Contractual Setting*

To support a conviction for theft, the State must prove that the defendant unlawfully appropriated property with the intent to deprive the owner of property without the owner's effective consent. Tex. Penal Code § 31.03(a); *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012). Consent is not effective when it is induced by deception. Tex. Penal Code § 31.01(3)(a); *Ehrhardt v. State*, 334 S.W.3d 849, 853 (Tex. App.—Texarkana 2011, pet. ref'd).

A theft claim arising out of a business contract requires more than just proof of the intent to deprive the owner of property and the actual appropriation of the property. *Ehrhardt*, 334 S.W.3d at 853; *Baker v. State*, 986 S.W.2d 271, 274 (Tex. App.—Texarkana 1998, pet. ref'd). In typical contractual settings, consideration results in one party intending to deprive another of property and the actual appropriation of the property. *Baker*, 986 S.W.2d at 274. Absent a heightened standard of proof, purely civil matters, such as disputes over contract prices, would

6

become criminal. *See id.* Therefore, in criminal theft cases arising out of breaches of contracts, the State must prove that "the appropriation was a result of a false pretext, or fraud." *Wirth*, 361 S.W.3d at 697. While theft can occur within a contractual agreement, "if money was voluntarily given to the appellant pursuant to a contractual agreement and there is insufficient evidence in the record to show the money was obtained by deception, the conviction cannot stand." *Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

In the context of a criminal offense, failure to perform a contractual obligation without other evidence of intent is not sufficient proof that a party to a contract did not intend to perform. *See* Tex. Penal Code § 31.01(e). The evidence must also show that the defendant intended to deprive the owner of the property at the time it was taken. *Wirth*, 361 S.W.3d at 697. Intent to commit theft can be inferred from the surrounding circumstances. *Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974). Intent is most often proven through the circumstantial evidence surrounding the crime, rather than through direct evidence. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). A jury may infer intent from any facts that tend to prove the existence of intent, such as the acts and words of the defendant. *Id.* Factors to consider when evaluating if the defendant possessed the requisite intent to commit theft include whether the defendant personally gained from what was allegedly taken, whether the defendant partially performed, and the "logical force of the combined pieces of circumstantial evidence in the case, coupled with reasonable inferences from them." *Christensen v. State*, 240 S.W.3d 25, 32-36 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

7

In determining whether Arispe had the requisite criminal intent to commit theft, the jury could consider whether he personally gained from the property that was allegedly taken. *See id.*; *see also King v. State*, 17 S.W.3d 7, 17 (Tex App.—Houston [14th Dist.] 2000, pet. ref'd) (explaining that evidence that defendant had criminal intent is partially shown by his use of complainant's money to pay personal expenses). Viewed in a light most favorable to the jury's verdict, Arispe clearly personally gained from the $900.00 Solomon gave him. He used the money, which was specifically designated for the purchase of materials for the kitchen project at Solomon's rental property, for other expenses—unrelated business expenses and personal expenses. Therefore, a reasonable jury could conclude Arispe benefitted from the $900.00 taken.

In this case, the only evidence that Arispe did not intend to commit a theft is Arispe's own self-serving testimony and his previous performance working for Solomon. Arispe argues that he would have performed the contract, but for his fear of damaging the items left in the rental property. He also testified that he actually *did* partially perform by sending workers to help Solomon and taking measurements of the house. Arispe analogizes these facts to a series of cases in which a contract was partially performed and therefore, the intent to not perform the contract could not be found. *See, e.g.*, *Ehrhardt*, 334 S.W.3d at 853-54; *Phillips v. State*, 640 S.W.2d 293, 293-94 (Tex. Crim. App. 1982).

However, this case is distinguishable from those cases because there is no direct evidence to show that Arispe ever partially performed on the contract. The only evidence Arispe presented at trial to prove he attempted performance was his own account of what occurred. Further, Solomon testified that no one helped him or came to the rental property and that Arispe never visited

8

the site. A reasonable jury looking at this evidence could believe Solomon's testimony and conclude that Arispe did not partially perform on the contract. The jury was entitled to resolve the disputed fact of partial performance against Arispe.

Solomon testified that he attempted to contact Arispe several times to find out why work had not been started at the rental property. When he did finally make contact, Arispe told him work would begin shortly but never followed through on that statement. Arispe testified he did not receive most of Solomon's emails, texts, and phone calls. However, according to Arispe's own testimony, he did receive some of them. A reasonable jury could conclude from this that Arispe was avoiding Solomon because he did not intend to fulfill the contract, indicating his intent to deceive him from the time when they entered into the contract.

Arispe also produced a contract with a finish date after the date when Solomon went to file a report with the police. However, the contract was in Arispe's possession, and Solomon testified he did not and would not sign a contract with a finish date several months after the project was to begin. A reasonable jury could believe Solomon's testimony that as future landlord he would never sign a contract that allowed Arispe to continue work on a rental property for a period of time greater than three months.

While Solomon and Arispe may disagree about the facts and the logical inferences that flow from them, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)). In such a situation, it is the jury that has the responsibility to decide which inference to believe. *Id.* The trier of fact is the

exclusive judge of the credibility of the witnesses and the weight given to their testimony in determining whether the evidence shows Arispe had the intent to permanently deprive Solomon of his property when they entered into the contract.

Viewing all the evidence in the light most favorable to the verdict, the logical force of the combined pieces of circumstantial evidence in this case, together with the reasonable inferences from them, could lead a rational jury to determine that Arispe intended to deprive Solomon of his property.

## CONCLUSION

Having found that the circumstantial evidence is sufficient for a rational jury to conclude that Arispe intended to permanently deprive Solomon of his property, we hold the evidence is sufficient to support his conviction of theft of $500 or more but less than $1,500. Accordingly, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin and Field

Affirmed

Filed:   July 24, 2013

Do Not Publish

10