# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-15-00306-CR

**Donald Lewis, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-13-204137, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Donald Lewis of one count of aggravated sexual assault of a child and one count of indecency with a child. *See* Tex. Penal Code §§ 21.11(a)(1), 22.021(a)(2)(B). The jury then assessed punishment at forty years and twenty-five years respectively for these offenses, with the sentences to run concurrently. In two issues, Lewis contends on appeal that there was insufficient evidence to support his conviction for aggravated sexual assault of a child and, alternatively, that his conviction for indecency with a child should be subsumed by his conviction for aggravated sexual assault. We will affirm the conviction.

### BACKGROUND

On June 26, 2013, the complainant in this case, J.H., was placed in a residential treatment facility for girls who are in foster care. Within days of arriving, J.H., thirteen at the time, climbed out of a bathroom window and ran away from the facility. Facility staff reported her

missing to the police, but she returned to the facility on July 2, 2013. Upon her return, she was crying, appeared disheveled, and reported physical and sexual assault. Staff members from the facility contacted the police, and Officer Nathan Blake from the Austin Police Department responded. Officer Blake interviewed J.H. about her reports and drove her around the area of the facility so that J.H. could point out the locations where she alleged the assaults to have taken place. While driving with Officer Blake, J.H. identified an apartment later determined to be Lewis's residence. Officer Blake collected J.H.'s clothing, including her underwear, to be tested for DNA evidence.

After J.H. identified Lewis's apartment, Officer Blake dropped her off with a staff member from the facility, who then took her to the hospital for a sexual-assault examination. At the hospital, Julie Gibbs, a sexual-assault nurse examiner (SANE), performed the exam and collected external and internal swabs from J.H., including swabs from her vaginal canal and cervix. Gibbs also collected two hairs from J.H.'s vaginal canal during the exam.

After dropping off J.H., Officer Blake returned to the apartment J.H. identified, at which time he identified Joseph Quander and Clyde Pleasant leaving the apartment.[1] Quander was questioned by police at some point thereafter and acknowledged that he saw J.H. at Lewis's apartment over two days during the time she was missing from the facility. He also admitted that he and Lewis had a sexual encounter with J.H. in Lewis's bedroom at the apartment.[2] During that

---

[1] Quander stated that he and Pleasant stayed at Lewis's one-bedroom apartment for several months. Lewis lived in the only bedroom, and Quander and Pleasant usually slept in the living room.

[2] In a separate case, Quander pled guilty to a charge of aggravated sexual assault of J.H. and was sentenced to ten years in prison based on this same encounter.

encounter, Quander reported that he performed oral sex on J.H. while J.H. performed oral sex on Lewis. When asked if he saw Lewis's sexual organ penetrate J.H.'s mouth, Quander said he was unsure because he "wasn't trying to watch." According to Quander, the encounter lasted approximately ten to fifteen minutes, and all three then got dressed and returned to the living room. Quander stated Lewis did not engage in any other type of sexual activity with J.H. during the encounter. After they returned to the living room, Lewis told Quander he needed "some space," which Quander interpreted as a suggestion that Lewis wanted to have "further relations" with J.H., so Quander left the apartment. J.H. was still at the apartment, sitting in the living room with Lewis, when Quander returned several hours later, though he did not observe any additional sexual activity between them.

Police detectives also questioned Lewis, who had been arrested for an unrelated parole violation. Lewis denied having any sexual encounter with J.H., but he admitted that she came to his apartment on at least two occasions with his friend Jeana DeCoux. He told police that J.H. said she was over eighteen but that he did not believe her. Lewis also stated that they smoked "weed" and drank beer while she was there.[3]

Forensic scientists from the Austin Police Department Crime Lab tested the DNA specimens collected during the SANE exam as well as J.H.'s underwear. Spermatazoa was present on both the cervical and vaginal swabs, and Lewis could not be excluded as a contributor to those samples. There were several stains found on J.H.'s underwear which also all contained spermatazoa.

---

[3] Quander testified that he was high on crack cocaine at the time of the sexual encounter with Lewis and J.H.

3

Although the DNA from the stains was determined to be a result of multiple contributors, Lewis could not be excluded as contributor from any of the samples collected. The Austin Police Department Crime Lab performed DNA testing on the hairs found in J.H.'s vaginal canal, from which it was determined that J.H. was the source of the DNA in the major component of the hair specimen. The source of the minor component of the sample could not be confirmed through the types of testing performed at the Austin Police Department Crime Lab, so the hair specimen was then sent to Rachel Burch at the University of North Texas for further testing. After performing a Y-STR analysis, which focuses solely on the male component of the sample, Burch concluded that Lewis could not be excluded as a contributor from the hair sample.

In the indictment, Lewis was charged with five counts of aggravated sexual assault of a child and four counts of indecency with a child. At trial, the trial court instructed the jury on four counts of aggravated sexual assault of a child and two counts of indecency with a child by contact.[4] First, the jury was asked to determine whether Lewis committed aggravated sexual assault of a child by penetrating J.H.'s sexual organ with his sexual organ (Count 1) or, alternatively, by Lewis's sexual organ contacting J.H.'s sexual organ (Count 2). If the jury acquitted Lewis of aggravated assault of a child as charged in Counts 1 and 2, the instructions asked the jury to determine whether Lewis committed the lesser-included offense of indecency with a child by touching the genitals of J.H. (Count 7). Additionally, without regard to its determinations on Counts 1, 2, and 7, the jury was instructed to determine whether Lewis committed aggravated sexual assault

---

[4] Counts 5, 8, and 9 of the indictment were not pursued by the State and were not included in the jury charge.

of a child by penetrating J.H.'s mouth with his sexual organ (Count 3) or, alternatively, by Lewis's sexual organ contacting J.H.'s mouth (Count 4). If the jury acquitted Lewis of aggravated sexual assault of a child as charged in Counts 3 and 4, the instructions asked the jury to determine whether Lewis committed the lesser-included offense of indecency with a child by causing J.H. to touch Lewis's genitals (Count 6). The jury found Lewis guilty of aggravated sexual assault of a child by penetration of J.H.'s sexual organ as charged in Count 1 and, accordingly, did not reach Counts 2 and 7. The jury found Lewis not guilty of aggravated sexual assault of a child as charged in Counts 3 and 4 but convicted Lewis of the lesser-included offense of indecency with a child as charged in Count 6.

After a punishment hearing during which it received evidence of Lewis's prior convictions, the jury assessed punishment at forty years' confinement for aggravated sexual assault of a child and twenty-five years' confinement for indecency with a child. This appeal followed.

## DISCUSSION

In two issues, Lewis argues that the evidence is legally insufficient to support his conviction for aggravated sexual assault of a child and that, alternatively, his conviction for indecency with a child is subsumed by his conviction for aggravated sexual assault of a child.

### Sufficiency of the Evidence of Aggravated Sexual Assault

In his first issue, Lewis challenges his conviction for aggravated sexual assault, asserting the evidence was insufficient to prove he penetrated the victim's sexual organ. Specifically, he asserts that there was no direct evidence of penetration and that the circumstantial

evidence supporting penetration was not sufficient for the jury to reasonably infer that Lewis penetrated J.H.'s sexual organ with his sexual organ. We disagree.

When reviewing the sufficiency of the evidence, we must determine whether a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319, 326. Further, the jury may support its verdict with reasonable inferences drawn from the evidence. *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim App. 2009); *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). We must only "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper*, 214 S.W.3d at 16–17; *see also Jackson*, 443 U.S. at 319. Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13; *Jessop v. State*, 368 S.W.3d 653, 663–64 (Tex. App.—Austin 2012, no pet.). Furthermore, we presume that conflicting inferences and issues of credibility were resolved in favor of the conviction and defer to that resolution. *Clayton*, 235 S.W.3d at 778.

A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes penetration of the sexual organ of a child younger than fourteen years of age. *See* Tex. Penal Code § 22.021(a)(1)(B)(I). In the present case, Lewis challenges only the State's

6

evidence to show penetration of J.H.'s sexual organ by Lewis's sexual organ. Penetration may be proven by circumstantial evidence, *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) (en banc), and evidence of even the slightest penetration is sufficient, *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *see Nilsson v. State*, 477 S.W.2d 592, 596 (Tex. Crim. App. 1972); *Jessop*, 368 S.W.3d at 664. There is no requirement that the child victim testify about penetration. *Villalon*, 791 S.W.2d at 133.

There was significant circumstantial evidence of penetration by Lewis in this case. J.H. reported to facility staff and police that she had been sexually assaulted in an apartment in which Lewis resided.[5] Julie Gibbs, the SANE nurse who examined J.H., testified that the only way Lewis's sperm could reach J.H.'s cervix would have been through penetration of J.H.'s sexual organ. Forensic scientists from the Austin Police Department Crime Lab testified that swabs taken from J.H.'s cervix during her SANE exam contained Lewis's sperm. The two hairs recovered from J.H.'s vaginal canal were also shown to have Lewis's DNA in the minor component. Based on this evidence, the jurors could have reasonably inferred that Lewis's sperm was deposited on J.H.'s cervix through penetration by Lewis's sexual organ. *See Jessop*, 368 S.W.3d at 664 (concluding circumstantial evidence was sufficient to prove penetration when child victim was in "spiritual marriage" with defendant and gave birth to his child); *see also Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.) (holding that jurors may use common sense when giving effect

---

[5] There was only brief testimony regarding what J.H. told staff members and police regarding the assault. The testimony was only that J.H. reported a sexual assault when she returned to the facility on July 2, 2013. Lewis refers in his brief to this testimony as "hearsay," but there was no such objection made during trial.

to inferences that can reasonably be drawn from evidence). Viewing the evidence in the light most favorable to the verdict, and with proper deference to the jury's role of resolving conflicts, evaluating credibility, and weighing the evidence, a rational juror could have found that Lewis penetrated J.H's sexual organ with his sexual organ. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778.

Lewis argues that the sperm may have been deposited on J.H.'s cervix by something other than his sexual organ or that sperm could have reached J.H.'s cervix without penetration if she sat on his ejaculate. However, Gibbs testified that she would not expect sperm to travel to the cervix if J.H. sat in ejaculate. Even assuming such events were plausible, there was no evidence of these events introduced, and the State need not disprove every possible alternative in order for us to determine that the evidence is legally sufficient to support Lewis's conviction. *Jenkins v. State*, 493 S.W.3d 583, 601 (Tex. Crim. App. 2016) ("[W]e will not usurp the role of the fact finder by factoring into our sufficiency analysis an alternative 'hypothesis inconsistent with the guilt of the accused.'" (citing *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 570 (Tex. Crim. App. 2000))); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015) (noting that "[b]eyond a reasonable doubt" does not require the State to "disprove every conceivable alternative to a defendant's guilt"). As such, we hold that the evidence of penetration is legally sufficient to support Lewis's conviction for aggravated sexual assault of a child. We overrule Lewis's first issue.

**Double Jeopardy**

In Lewis's second issue, he asserts that the charge for indecency with a child was subsumed by his conviction for aggravated sexual assault of a child because Lewis's encounters with

J.H. were "one continuing criminal episode over two days." We disagree. The record establishes two separate and distinct sexual offenses by Lewis and thus supports the two convictions.[6]

The double-jeopardy prohibition protects criminal defendants against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. U.S. Const. amends. V, XIV; Tex. Const. art. I, § 14; *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Lopez v. State*, 108 S.W.3d 293,

---

[6] The State asserts that Lewis waived his complaint of double jeopardy by not raising it at trial. Generally, a double-jeopardy claim must be raised in the trial court in order to preserve error on appeal, but because of the fundamental nature of such a claim, it may be raised for the first time on appeal when the "undisputed facts show the double-jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (en banc); *see Urtado v. State*, 333 S.W.3d 418, 423 (Tex. App.—Austin 2011, pet. ref'd). "A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim." *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013). Having reviewed the record in this case, Lewis's double-jeopardy claim can be resolved based on the record before us. *See id.* Additionally, with respect to the second prong of the *Gonzalez* test, we believe enforcement of the usual rules of procedural default would serve no legitimate State interest. The appropriate remedy for a double-jeopardy violation is to vacate one of the convictions and retain the conviction with "the most serious punishment." *Ball v. United States*, 470 U.S. 856, 864 (1985); *Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009). If successful, Lewis's double-jeopardy challenge would result in this Court vacating his conviction for indecency with a child by contact under Count 6. This result would not require a retrial or even a remand to the trial court. Therefore, there are no adverse consequences resulting from appellant raising his double jeopardy claim for the first time on appeal. *See Shaffer v. State*, 477 S.W.2d 873, 875 (Tex. Crim. App. 1971); *Saenz v. State*, 131 S.W.3d 43, 50 (Tex. App.—San Antonio 2003), *aff'd*, 166 S.W.3d 270 (Tex. Crim. App. 2005); *Roy v. State*, 76 S.W.3d 87, 94–95 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Additionally, because Lewis stood trial for all of the relevant offenses before the same judge and jury, the trial court knew or should have known of the potential double-jeopardy issue, resulting in no legitimate State interest in enforcing the usual rules of procedural default. *See DeMoss v. State*, 12 S.W.3d 553, 559 n.2 (Tex. App.—San Antonio 1999, pet. ref'd) ("[I]n cases where the trial court either knew or should have known of the jeopardy problem, no purpose is served in enforcing the state procedural rule and the defendant may assert this interest after trial."). Having satisfied both prongs of the *Gonzalez* test, we consider Lewis's double-jeopardy claim on appeal.

295–96 (Tex. Crim. App. 2003). In assessing whether Lewis's convictions for aggravated sexual assault of a child and indecency with a child constituted multiple punishments for the same offense, we must consider whether the convictions are based on the same act or whether each violation is predicated on a separate act. *See Blockburger v. United States*, 284 U.S. 299, 301–03 (1932); *Maldonado v. State*, 461 S.W.3d 144, 149–50 (Tex. Crim. App. 2015); *Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014); *Barnes v. State*, 165 S.W.3d 75, 88 (Tex. App.—Austin 2005, no pet.). "If the offense is a single continuous act, with a single impulse, in which several different statutory provisions are necessarily violated along that continuum, the offenses merge together." *Aekins*, 447 S.W.3d at 275. However, separate charges of indecency with a child and sexual assault of a child are proper if the record supports separate and distinct acts, even if committed in close temporal proximity, and the incidents may lawfully give rise to a conviction for each separate act. *See Maldonado*, 461 S.W.3d at 147, 149–50; *Loving v. State*, 401 S.W.3d 642, 650 (Tex. Crim. App. 2013) (Cochran, J., concurring); *see also Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding that when two penetrations were separated by short period of time, two independent assaults occurred, and it was proper to submit two different charges to jury).

Here, the jury was presented with evidence of multiple instances of Lewis engaging in sexual conduct with J.H. As discussed above, the evidence in the record was sufficient to support the jury's finding that Lewis penetrated J.H.'s sexual organ with his sexual organ during at least one sexual encounter, resulting in his sperm and DNA being deposited in her vagina and on her cervix. Quander also testified that he performed oral sex on J.H. while Lewis received oral sex from her. He

10

further stated that no other sexual conduct between Lewis and J.H. occurred during this encounter and that the three of them got dressed and exited Lewis's bedroom together afterwards.

Lewis asserts that the jury must have disbelieved Quander's eyewitness testimony about the encounter because it did not convict him of aggravated assault of a child by oral penetration, and therefore, there must have been only one sexual encounter between Lewis and J.H. However, the jury was free to believe portions of Quander's testimony without believing all of it and to resolve any such conflicts in reaching its verdict. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). For example, although Quander testified that Lewis received oral sex from J.H. during the encounter, he also stated that he did not see Lewis's sexual organ enter J.H.'s mouth because he "wasn't trying to watch." The jury could have reasonably determined that while Quander's testimony was not clear enough to support a conviction for aggravated sexual assault in Counts 3 and 4 based on this testimony, it was enough to support a conviction for indecency with a child by contact as charged in Count 6.

Accordingly, we hold that the lesser-included offense of Count 6 is not factually subsumed by the offense in Count 1 because there was evidence from Quander's testimony that a separate and distinct contact of Lewis's genitals by J.H. occurred in addition to the penetration of J.H.'s sexual organ by Lewis's sexual organ. As such, the two convictions do not violate the double-jeopardy prohibition. *See Maldonado*, 461 S.W.3d at 147, 149–50. We overrule Lewis's second issue.

11

**CONCLUSION**

Having overruled both of Lewis's issues on appeal, we affirm the judgment of the trial court.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed:   April 12, 2017

Do Not Publish

12